Allender, Adm'r. *D. B. N.* of Wyse, *vs.* Riston.
*December,* 1829.

W. died intestate in 1814, as to his personal estate. Administration was granted to his widow, who returned an inventory, and in 1816 settled an account with the Orphans Court, in which she obtained credit for various payments. She, with several, but not all, of the deceased's children, in 1822 united in a mortgage to the defendant, of some of the personal property which the intestate left, to secure the payment of a debt, for which the mortgagors were responsible to the defendant. The mortgage did not profess to be executed by the widow, in her representative character ; and it did not appear that any of the intestate's debts remained unpaid. The widow died, and in 1823 the plaintiff was appointed administrator d. b. n. of W, and brought replevin against the defendant, who claimed the goods under his mortgage. Held, That in as much as strong circumstances existed in the case, to induce the presumption that the intestate's debts had been all satisfied, it was fair to infer that the administratrix had made distribution of the remaining assets, and acted in her character of distributee, in making the mortgage ; that therefore the plaintiff was not entitled to recover.

An inventory made and returned by an administrator to the Orphans Court, after he has commenced an action for the recovery of the property included therein, is not competent evidence for him at the trial of the cause ; for he might become personally liable for the costs of the suit.

The sheriff's schedule of goods returned, as taken and delivered in an action of replevin at the suit of R, may be read in evidence by the plaintiff, (who was one of the defendants in the replevin,) in an action against R, for the purpose of proving that R was in possession of the same goods, on the day after they were first taken.

Appeal from *Baltimore* County Court.

This was an action of *Replevin* brought on the 16th of July, 1823, by the now appellant, against the appellee, for certain goods and chattels, and negro slaves. The defendant (the appellee) pleaded *non cepit,* and property in himself. Issue was joined to the first plea, and general replication and issue to the second plea.

1. At the trial the plaintiff gave in evidence that *William Wyse,* the plaintiff's testator, departed this life at his residence in *Baltimore* county, about the year 1814, leaving

the following last will and testament: "*Baltimore*, 12th March, 1814—Having at this perilous moment of my life committed myself to the care of Almighty God, whom I trust will receive my soul, I have only to request my affectionate wife and son *John*, in case of a deficiency of my estate, to support and educate my children; that my real estate, known by the name of *the Deer Park*, be disposed of for the maintenance of said children, under the direction of my wife *Rachel*, and *John Wyse*."

The will was proved on the 12th of April, 1814, by two of the subscribing witnesses, &c. That after his death, letters of administration, with the will annexed, were duly granted to *Rachel Wyse*, the widow of the said testator, who took upon herself the execution of said trust. That the said *Rachel Wyse*, as administratrix aforesaid, returned to the Orphans Court of *Baltimore county* the following inventory and account. The inventory was dated the 8th of July, 1814, and proved by the administratrix on the 23d of July, 1814, amounting to $6735 25. The first account was settled by the administratrix with the Orphans Court on the 29th of June, 1816, in which she charged herself with the amount of the inventory, $6735 25. Also for cash received from sundry persons, $270, being a total of $7,005 25. She craved allowance for sundry payments and disbursements, $1292 91, leaving a balance due the estate of $5712 34. And died about the month of April, 1823, having returned no other account than that above stated, of her administration aforesaid. The plaintiff further gave in evidence, that at the death of the said *William Wyse*, he was entitled to, and in possession of, the property in dispute in this cause, and that the same continued in the possession of the said *Rachel Wyse* until her death. He further gave in evidence, that after the death of the said *Rachel Wyse*, letters of administration *de bonis non*, on the estate of the said *William Wyse*, were duly granted to the plaintiff in this cause; and that the plaintiff, as such administrator, returned to the Orphans Court of *Baltimore* county the following inventory:

The inventory, made by certain appraisers in the usual form, was dated the 23d of January, 1824, amounting to $2293, and proved by the plaintiff, as administrator aforesaid, on the 3d of February, 1824. On the back of the inventory is thus written: "All the goods and chattels described in the within inventory, are claimed by *George Riston*, and actions are now depending in *Baltimore* County Court for the purpose of trying the right of the said *George Riston*, and also the right of the administrator, to the said goods and chattels." Signed by the administrator *de bonis non*, &c. The plaintiff further gave in evidence, that no other proceedings in relation to the said estate of the said *William Wyse*, deceased, except those above stated, have been had in the Orphans Court. He also gave in evidence, that the said *William Wyse* left a widow, the above named *Rachel Wyse*, and eight children, namely, *John M.*, *William A.*, *(a) Margaret, Nicholas, Edward, Matilda*, and *Octavius*, all of whom, except the three first, are minors, and yet living. He further gave in evidence, that the property in controversy in this case, was replevied out of the possession of the present defendant, and that such property is the same as that mentioned in the aforegoing inventories.

The defendant then offered in evidence the following instrument of writing, under the attestation and certificate of the clerk of *Baltimore* County Court thereupon endorsed. This was a deed of mortgage, dated the 16th of May, 1822, between *Rachel Wyse*, widow of *William Wyse*, deceased, *John M. Wyse*, *William A. Wyse* and *Eliza Wyse*, stating that the grantors were indebted to the grantee in the sum of $2000 upon a promissory note then drawn by the said *John M. Wyse*, in favor of the said *Rachel*, or order, and by her and the said *William A.* and *Eliza* endorsed, payable 12 months after date; and for the purpose of securing the payment of the said sum of money at the time limited by the said promissory note for the payment thereof, the

(a) *The name of Eliza is omitted, probably by mistake.*

grantors agreed to execute these presents—whereby was granted, &c. to the said grantee, "his heirs, executors, administrators and assigns, all the right and estate whatsoever, both in law and equity, of the said *Rachel Wyse, John M. Wyse, William A. Wyse* and *Eliza Wyse,* and each of them, as well of, in, to and out of, all that lot of ground number 49, situate and lying on *Fell's Point* in the city of *Baltimore,*" &c. " as in all and singular other the real and personal estate of every description, whereof the said *William Wyse* died seized or possessed, or to which he was in any manner entitled at the time of his death, wherever the same may be. To have and to hold all and singular the real said and personal estate, property and premises," &c. unto the said *George Riston,* his heirs, executors, administrators and assigns," &c. The defendant also offered in evidence, that *Rachel Wyse,* the administratrix of *William Wyse,* deceased, and one of the said mortgagors, were at the time of the execution and delivery of the said instrument of writing to the defendant, in the actual possession of the property therein mentioned, and that the personal property is the same property mentioned in the declaration in this cause. That the said *Rachel Wyse,* upon the death of her husband, had taken possession of the said property as administratrix; and that she and the other mortgagors had lived upon the farm from the time of the death aforesaid, and used the said personal property as their own, until the time of the execution of the said instrument of writing, and afterwards. That they had no other personal property. The defendant then prayed the opinion of the Court, and its direction to the jury, that by the said instrument of writing, such an interest in and to the property therein mentioned, passed to the defendant, as prevents the plaintiff, as administrator *de bonis non* of *William Wyse,* from maintaining the present action, and that he is not entitled to recover. Of which opinion the Court (HANSON, A. J.) was, and instructed the jury as prayed by the defendant. The plaintiff excepted.

2. The plaintiff then asked the opinion of the Court, and

their direction to the jury, upon all the evidence stated in the plaintiff's next preceding bill of exceptions. 1st. That the said deed of mortgage, so given in evidence by the defendant in such prior bill of exceptions, operated to pass no more of the personal estate of *William Wyse*, deceased, than the interest and share to which the parties, mortgagors to such mortgage, were respectively entitled, as the widow and distributees of *William Wyse*, deceased, after the payment of the debts of the said deceased. 2d. That the said deed conveys no interest in the said estate to which the said *Rachel Wyse*, one of the parties thereto, was entitled as administratrix. 3d. That the said *Rachel Wyse* had no legal authority to execute the said deed, as administratrix, so as to transfer any interest she had in the said estate as administratrix. 4th. That as she does not describe herself in the said deed as administratrix of the said *William Wyse*, the true construction of the deed is, that she did not intend thereby to transfer her interest in the said estate, as administratrix. 5th. That inasmuch as the consideration stated in the said deed, is to secure a debt due by the said *Rachel Wyse*, in her individual character, as the endorser of the note in the said deed mentioned, that the same was not such a fair and *bona fide* consideration as would render the said deed legal and valid to pass any other interest in the personal estate of the said *William Wyse*, than the interest which she and the other mortgagors had in the said estate as the distributees thereof. But the Court refused to give each and every of the said opinions to the jury. The plaintiff excepted.

3. The plaintiff having offered in evidence the letters of administration granted on the estate of *William Wyse*, deceased, to *Rachel Wyse*, on the 12th of April, 1814, and the inventory returned by her to the Orphans Court of *Baltimore* county, in which county the said *William Wyse* died, of the personal estate of which the said deceased died possessed, dated the 23d of July, 1814, and having proved that the said *Rachel Wyse* departed this life in the year 1821

or 1822, and having offered in evidence the letters of administration *de bonis non* on the estate of the said *William Wyse*, granted to the plaintiff the 16*th of July*, 1823, then offered in evidence the paper purporting to be an authenticated copy of the inventory of the estate of *William Wyse*, returned by the plaintiff, as administrator *de bonis non* aforesaid, for the purpose of proving that the articles of property contained in the said last inventory were the property in possession of the said *Rachel Wyse*, as administratrix aforesaid, at the time of her death unadministered, (being the same as inserted in the first bill of exceptions.) The defendant objected to this evidence, 1st. Because the said inventory was not made or exhibited until after the commencement of this suit. 2d. That it afforded no evidence that the property therein mentioned was the same for which this suit was brought. 3d. That the said inventory having been made by the plaintiff, it was, therefore, incompetent evidence. 4th. That the said inventory does not appear to have been judicially sanctioned by the Orphans Court, otherwise than by admitting the same to be recorded; nor to have been otherwise verified in the Orphans Court, except by the bare oath of the plaintiff himself. 5th. That the said paper so offered, does not, in any respect, conduce as proof to the object for which it is offered, nor to prove the issue in this case. The Court were of opinion that the said paper, so offered in evidence, was competent and legal proof to show the fact that such an inventory was made and given by the plaintiff in the Orphans Court; but not to prove that the property therein mentioned belonged to the plaintiff or his intestate; and refused to let the said inventory be read in evidence for the purpose for which it was offered by the plaintiff. The plaintiff excepted.

4. The plaintiff, to prove the property or some part thereof, in the declaration mentioned, to have been in the possession of the defendant at the time of the replevin, offered in evidence by *P. Codd*, a competent witness, that the property in the declaration mentioned was on the farm

occupied by *William Wyse* in his life time, and *John M. Wyse*, his son, at the time of the service of the writ of replevin in this case. That the same property had not been taken possession of, or removed by the defendant, except a small portion of the furniture which had been put in the defendant's wagon; but when so put in the wagon, the defendant was not on the premises. And the witness states that he does not remember whether the schedule and receipt, hereinafter referred to, were signed by the defendant, on the farm, or in the city of *Baltimore;* but when the witness went on the premises, *Mr. Fishach*, the agent of the defendant, was there, and loading the wagons by the defendant's direction. The negroes were not in the wagon. The witness saw no opposition at the time made by any person to the defendant's taking the property. The witness stated that he did not recollect any thing of the property, more than he finds mentioned in the schedule in his handwriting. He saw the property on the place, and in the hands of *John M. Wyse.* Upon explaining this part of his testimony, the witness states that he did not mean thereby to say the property not in the wagon was in the actual possession of *John M. Wyse*, or that any part of it was so: that he did not know the property to have been *William Wyse's.* The plaintiff then offered in evidence the follow ing paper : "A schedule of the goods and chattels of *John M. Wyse, Eliza Wyse* and *William A. Wyse*, seized and taken at the suit of *George Riston*, by virtue of a writ of replevin issued out of *Baltimore* County Court, and to the sheriff thereof directed, and appraised by us, the subscribers, after being duly summoned and sworn for that purpose. Given under our hands and seals, this —— day of July, 1823. One negro girl named *Nan*, aged 15, $230," &c. The whole amounting to $1905 37½, and signed by the appraisers. Also a receipt dated the 15th of July, 1823, signed by *Riston*, stating that he had received from the sheriff of *Baltimore* county "the foregoing list of goods, as per schedule." Which paper, it was admitted, was one

of the papers of record in this Court in the cause in which *George Riston* was plaintiff, and *John M. Wyse, Eliza Wyse* and *William A. Wyse,* were defendants, and was the schedule prepared and returned in that cause by the sheriff of *Baltimore* county. To the reading of which paper to the jury, the defendant objected as incompetent evidence. 1st. Because the said paper is a part of the proceedings in another cause; and that it is not competent for the plaintiff to offer such evidence without producing the whole of the proceedings in the said cause. 2d. Because the said proceedings are in a cause between other and different parties. 3d. Because the said evidence is not relative to the issue on the part of the plaintiff in this cause. But the Court overruled the objection, and permitted the said paper to be read to the jury. The defendant excepted. Verdict and judgment for the defendant, and the plaintiff appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*J. Scott,* for the appellant, contended,

1. That the property mentioned in the proceedings in this cause, passed to, and vested in, *Joseph Allender,* the appellant, as administrator *de bonis non* of *William Wyse.* 2. That the deed of mortgage, given in evidence by the defendant, operated to pass no more of the personal estate of the said *William Wyse,* deceased, than the interest or share to which the parties, mortgagors, were respectively entitled, as the widow and distributees of the said testator, after the payment of his debts. 3. That the said deed conveyed no interest in said estate, to which *Rachel Wyse* was entitled, as administratrix of the said *William Wyse.* 4. That the said *Rachel Wyse* had no legal authority, as administratrix, to execute the said deed, and transfer any interest which she held as administratrix in the said personal estate. 5. That as she does not describe herself as administratrix,

the true construction of the said deed is, that she did not intend by the same to transfer her interest in the same, as administratrix.    6. That inasmuch as the consideration stated in the deed is to secure a debt due by the said *Rachel Wyse*, in her individual character, as the endorser of the note mentioned in the said deed, that the same was not such a fair and *bona fide* consideration, as would render the same deed legal and valid, to pass any other interest in the personal estate of the said testator, than the interest which the said *Rachel Wyse*, and the other mortgagors had in the said personal estate, as the distributees thereof.    7. That the inventory returned by the plaintiff to the Orphans Court, was competent evidence to go to the jury, for the purposes for which it was offered.    He referred in his argument to *Haslett's Adm'r. d. b. n. vs. Glenn*, 7 *Harr. and Johns.* 17, and *Hill vs. Simpson*, 7 *Ves.* 168.

*Glenn*, for the appellee, submitted on notes.    *William Wyse* died in March, 1814, intestate as to his personal estate.    Letters of administration were forthwith granted to his widow, who undertook the administration, and by her accounts returned, it appears that she proceeded to pay off the debts of the deceased.    And it nowhere appears that the administratrix left a single debt of the deceased unpaid at her death, unless the claim of *Riston* were such a debt. And such indeed was the fact, not a single debt remaining unsatisfied, for which the estate was liable.    The widow then, became entitled to one-third of all the personal property, in her own right, and the three other mortgagors to their parts, as children of the deceased.    She being the administratrix, and widow, and they the children, unite in conveying all the property to which they are entitled, to *Riston*, to secure a note, drawn and endorsed by the whole four, and he holds the property thus conveyed; and now the administrator, *de bonis non*, without shewing that there is a single outstanding debt due by the deceased, claims and

replevies property, thus conveyed by the former administrator.

We are here in a Court of Law, and not in a Court of Equity, endeavoring to fix a trust on the purchaser, as was the case of *Hill vs. Simpson*, 7 *Vesey, jr.*, cited by Mr. Scott, and we are to be governed by the rules of law.

Now what is the rule applicable to this case? It is this. An executor or administrator can sell or convey all the personal property of the deceased, whenever and wherever he pleases; and although it be a *devastavit* in him, yet this does not affect the sale. He may even give the property away. See *Went. off. of Executors*, 295, 297. 1 *At. Reports*, 463. *St. Andrew's Church vs. Tompkins*, 7 *Johns. Ch. Reports*, 16. *Noy*, 106. *Cro. Jac.* 318. *Coventry's Powell on Mortgages*, 101. *Toller*, 134. *Lord Hardwicke* says, in 1 *Atk.* 463: at law the executor has the power to alien or dispose of the assets of the testator, and no creditor at law can follow them. And Chancellor *Kent*, in 7 *Johns. Ch. Rep.* 16, states distinctly, that an executor has the right to transfer the assets of the deceased, to indemnify one of his own securities, not for him, as administrator, but in a different right.

In some cases in Chancery, the assets may be followed in the hands of the vendee, but they are extremely rare, and they all proceed upon the ground of implied trusts, with which this Court, as a Court of Law, has nothing to do. And this is the case in 7 *Vesey*, and which of course has no application to this case.

The case in 7 *Harr. and Johns.* 17, only decides that an executor does not, by paying the debts of the testator, become entitled to the property of the deceased. It does not at all profess to determine, that an executor cannot convey, by deed or otherwise, the assets of a testator; but this case leaves the law, as to the executor's power to sell, just where it found it. Suppose, however, I should be wrong on this point, still, as it appears, that when this conveyance was executed, that testator had been dead eight

years, and administration been granted for the same length of time, and it nowhere appears that there is a single outstanding debt; it follows that the widow was actually the owner of one-third of all the personal chattels, and the other grantors, *Eliza*, *William* and *John*, entitled to three-eighths of the residue. By Mrs. *Wyse's* account, it appears that on the payment of the debts, there was yet property to the amount of $5712 34; one-third of this is $1904 11; three-eighths of $3808 23 is $1428 09, making a total of $3332 20. Now it appears that the whole personal property in *Riston's* hands, only amounted to $2293, more than $1000 less than the grantors were entitled to. Will this Court then deprive the vendee of property thus conveyed, evidently less in value than it manifestly appears they were entitled to, from the estate of the deceased? Taking then Mrs. *Wyse* as administratrix of the deceased, or considering her and her three children as distributees, entitled to a portion of the estate, they were clearly entitled to convey the property in question to *Riston;* and if the children or creditors of *William Wyse*, deceased, have any right to this property, it can only be in equity, where they can resort for redress.

STEPHEN, J. delivered the opinion of the Court.

In this case the plaintiff, as administrator *de bonis non* of *William Wyse*, instituted an action of replevin against the defendant, to recover certain property, out of his possession, which he claimed in his representative character, as part of the assets of said *Wyse*. In 1814, *William Wyse* died intestate as to his personal estate; letters of administration were granted to his widow, who returned an inventory, and settled an account with the Orphans Court of *Baltimore* county, in which she craved an allowance for sundry payments and disbursements, amounting to the sum of $1292 91. This account was settled on the 29th of June, 1816. The deed of mortgage under which the defendant claims

title to the property, was dated on the 16th of May, 1822, executed by the widow and administratrix, and three of the representatives. Nearly six years had elapsed between the account settled with the Orphans Court, and the execution of the deed of mortgage. The question principally argued in this case, was, as to the power of an executor or administrator, to dispose of the assets of his testator or intestate, in satisfaction of his own debts. The mortgage was given as collateral security, for the payment of a note of hand drawn and endorsed by the mortgagors, payable to the defendant. According to the authorities, it seems that at law, an executor or administrator may transfer the assets of the deceased, in satisfaction of his own debts. *Toller on Executors,* 256, 257, says, he has power to sell, or as it has been held, to mortgage terms of years, or assign mortgaged terms, and to dispose of any of the effects; although as it seems specifically given by the will, and even in satisfaction of his own private debt. Nor when he has aliened the assets, can a creditor follow them at law; for the demand of a creditor is only a personal demand against the executor, in respect of the assets come to his hands, but no lien on the assets. Equity will, indeed, follow assets on voluntary alienations, by collusion with the executor; but if the alienation or pledge be for a valuable consideration, unless fraud be proved, neither law nor equity will defeat it: for a purchaser from an executor has no means of knowing the debts of the testator; and if a Court of Equity, on the subsequent appearance of debts, would control such purchaser, all dealings with executors, would be dangerous; and even in equity, Chancellor *Kent,* in referring to the case of *Nugent vs. Gifford,* 1 *Atkins,* 463, in 7 *Johns. Chan. Rep.* 17, says an assignment of a mortgage term (and it was a mortgage to trustees, in trust for the testator) was made by the executor to the plaintiff, in satisfaction of a debt due from the executor to the plaintiff. Yet *Lord Hardwicke* held the assignment to be valid, and that the creditors of the testator

VOL. II.—13

were not entitled to follow the property. A purchaser from an executor has no power of knowing the debts of the testator; and if he did know it was testamentary assets, it would not affect the validity of the assignment, as it was an alienation for a valuable consideration; and no fraud or collusion with the executor to misapply the assets, appeared. The doctrine in that case has been repeatedly advanced; and it appears to be an established principle, both at law, and in equity, that a bare act of sale of the assets by the executor, is a sufficient indemnity to the purchaser, if there be no collusion. In the case of *Whale vs. Sir Ch. Booth,* Lord *Mansfield* observed, that if at the time of the alienation, the purchaser knew they were assets, this was no evidence of fraud; for all the testator's debts may have been already satisfied: or, if he knew that the *debts were not* already satisfied, must he look *to* the application of the money? no one would buy on those terms. There is one exception, indeed, where a contrivance appears between a purchaser and an executor, to make a *devastavit.* In *7 Johns. Chan. Rep.* 157, Chancellor *Kent* says, "subsequent decisions, have, in some degree, restrained the extent of the doctrine laid down by Lord *Hardwicke,* and Lord *Mansfield.* In *Bonney vs. Ridgard,* 1 *Cox,* 144, Lord *Kenyon,* the Master of the Rolls, admitted, that in general the purchaser from the executors of the testator's assets was not bound to see *to* the application of the money; but, that if upon the face of the assignment of the property, it appeared to have been made in satisfaction of a private debt of the executor, the sale was fraudulent against the persons interested, under the will, and equity would relieve. It would be a case of implied fraud." So again in *Scott vs. Tyler, Dickens,* 712, *Lord Thurlow* held, that where an executrix pledged bonds, specifically, as a security for her own debt, contracted after the testator's death, the pawnee must deliver up the bond, for the benefit of the specific legatee. He admitted, that in general the purchaser of the assets had no concern with the application of the price, and that the rule applied equally

to mortgages, bonds and leases. But if one concerted with the executor to obtain the effects at a nominal price, or at a fraudulent under value, or in extinguishing the private debt of the executor, or in any other manner contrary to the duty of the office of executor, the purchaser or pawnee will be liable. In *Hill vs. Simpson,* 7 *Vesey, jr.* 152, *Sir William Grant* made a similar decree. He said, the assets *known to be such,* ought not to be applied in any case, for the discharge of the executor's debt, unless the creditor taking the assets can be first satisfied of his right so to apply them. *Lord Eldon* has also declared, "that there could not be a stonger case of a *devastavit* than an executor aliening the property of the testator, to pay his own debts, the alienee knowing at the time that debts of the testator were due. In the case now before this Court, it nowhere appears that there were any debts remaining due and unpaid at the time of the mortgage; or if they were, that the defendant knew of them, and to use the language of Mr. *Justice Ashhurst,* to be found in 4 *Term. Rep.* 645: "if the creditors will lie by and not assert their rights, it is reasonable for a third person to suppose that all the debts are satisfied." But in this case, it does not appear that the administratrix acted in her representative character at the time she executed the deed of mortgage: she does not, in terms, assume that character, and has associated herself in making the disposition of the property, with three of the children and representatives of her intestate: from this fact, connected with the strong circumstances existing in the case to induce a presumption that the debts were all satisfied, it is fair to infer that she had made distribution of the remaining assets, and acted in her character of distributee. And upon this view of the case, it follows that the appellant, the administrator *de bonis non,* is not entitled to recover.

As to the question raised in the cause, relative to the admissibility of the plaintiff's own inventory to support his case, made after the institution of the action, we think the

same was not competent evidence, because he might become personally liable for the costs of suit.

JUDGMENT AFFIRMED.