Bland, Chancellor.
This case standing ready for hearing, and having been argued by the plaintiff’s solicitor, and submitted without argument by the solicitor for' all the heirs of the late William Wyse, and no solicitor appearing for the other defendants, before the close of the sittings of the term according to the rule, the proceedings were read and considered.
The claim of the plaintiff Tessier, as stated in the bill, has been fully established. But the defendant Riston, in his answer, alleges, that the plaintiff Tessier, by his negligence and misconduct, has lost all right to any portion of either the real or personal estate of the testator; and that his only remedy is against the person of the defendant John M. Wyse. And the defendant William A. Wyse, denies that S. Smith fy Buchanan now have, or ever had any such claim as the real estate of the testator could be charged with. From these allegations it is clear, that these defendants do not rely upon the statute of limitations, or any lapse of time as a bar *35 to the plaintiff’s claim. And so far as these or any other allegations of any of these defendants may be understood to rely upon the fact, as stated by the defendant John M. Wyse, that the plaintiff Tessier received the bond in full satisfaction of his claim against the estate of the deceased, it is met, and so totally disproved by the testimony, that there is not left even a plausible pretext for any such defiance to rest upon. But, it would seem to be intimated, by these allegations; and, perhaps, it was intended to be relied on as a defence, that, as the plaintiff Tessier might have obtained satisfaction from the personal estate of the deceased, he has now, by his negligence and misconduct, lost his right to have recourse to the deceased’s real estate.
The nature of the negligence and misconduct of the plaintiff Tessier, thus relied on as a bar to his claim, have not been distinctly described; but, from all the circumstances of the case, it is evident, that none can be imputed to him, other than that of having failed to exert more active diligence for the recovery of his claim, either against the personal representatives, or the heirs of his deceased debtor, or both of them.
But a creditor is, under no circumstances, bound, in behalf of his principal debtor, to use any degree of active diligence. Considering the debt as an incumbrance, or as an inconvenience in any way, it is in the power of the debtor at pleasure, to remove it by making payment according to the terms of his own stipulation. If the creditor should remain inactive so long as to afford a legal presumption, that the debt had, in truth, never existed, or had been paid, the debtor may protect himself by relying on the statute of limitations, or the lapse of time as conclusive evidence in support of such presumption in bar of the plaintiff’s claim. Apart from the statute of limitations, or lapse of time as a bar, upon which none of these defendants have relied, no debtor is ever permitted to complain of the mere inactivity of his creditor. And, unless in cases where a creditor can be charged as a trustee, guilty of a breach of trust in not claiming, his merely neglecting to sue can never be imputed to him as a wilful default, or as injurious conduct towards any one. (a)
Here the debtor is dead, and the claim is made against his personal representative, and his heirs in respect of the personal and *36 real assets -which have come to their hands. It is a mortgagee from some of the heirs, and an heir who makes this defence against this claim.
As regards the mortgagee, it is perfectly clear, that he might, at any time, have sued for and recovered his claim by bill for a foreclosure and sale, or otherwise; or he might, by a creditor’s suit, have called before the court the creditors of the deceased, in order to have the property, so far as it had been mortgaged to him, relieved from their prior claims, by having them satisfied or rejected, so as to have the surplus applied in satisfaction of his claim. This mortgagee cannot, therefore, be permitted to complain of the negligence of this creditor, when it is so perfectly obvious, that he might have had him called before the court, and thus compelled to receive satisfaction for his, this mortgagee’s, benefit. It is equally well settled, that a next of kin or heir may, by a creditor’s suit, have the personal and real estate administered in equity, in order to have the estate cleared of the claims of creditors, so that what remains, may be at once awarded to him, or distributed among all such next of kin or heirs of the deceased. And, consequently, it is no less clear, that a next of kin, or an heir, can in no way, be allowed to complain of the mere negligence of a creditor in not enforcing payment from the personal or real assets of his deceased debtor. (b)
And even supposing these defendants to stand in any way as sureties for the payment of this debt to the plaintiff Tessier; then, as sureties, they might by a bill quia timet, have compelled these plaintiffs to have sued and obtained satisfaction from the person first liable, or from the proper fund, so as to save them, these defendants, harmless. Therefore, considered even as sureties, these defendants cannot- complain of the mere forbearance of their creditors; and thus have shewn no cause to impute to these plaintiffs negligence or misconduct of any kind whatever..
Perhaps these defendants by the charge of negligence and misconduct, and by the averment, that the plaintiffs have no such claim as the testator’s real estate can be charged with, intend to take defence upon the ground, that having failed to allege and shew the insufficiency of the personalty, the real estate of the testator cannot be made liable for the payment of this debt. This is a case in which a creditor, in behalf of himself and other credi *37 tors, claims a right to obtain satisfaction from the whole estate of his deceased debtor, leaving the burthen to be adjusted, as between the real and personal estate, as the law may allow, without prejudice to his or any other creditor’s claims to relief.
The question then is, whether it is necessary in a creditor’s suit, like this, that it should not only be shewn at the hearing, but distinctly stated and charged in the bill of complaint itself, that the personal estate was insufficient to pay all the debts of the deceased, and that the plaintiff had used all due diligence in endeavouring to obtain payment from the personalty, to enable him to obtain satisfaction by a sale of the real estate ?
It is no less essentially necessary in a Court of Chancery, than in a court of common law, that a plaintiff should distinctly set forth every fact and circumstance which constitutes that title upon which he asks relief. The forms of proceeding in Chancery, are, in general, not so precise as at common law; but the several facts which constitute a plaintiff’s title to relief are matters of substance which no court of justice can dispense with; they must, therefore, be clearly shewn according to the prescribed forms of the tribunal.
It has long been universally understood, that all the property of a debtor, real, as well as personal, without distinction or preference, was liable in one form or other to be taken in execution and sold for the payment of his debts. The necessity of applying to a court of equity to set aside conveyances or other obstructions fraudulently thrown in the way by a debtor, not being regarded as an exception to the general rule. The death of a debtor is never allowed to impair the obligation of his contract as respects his estate, or in any way to alter, or lessen the liability of his property. (c)
In a creditor’s suit, instituted for the purpose of having a deceased debtor’s whole estate administered in equity, the requiring all his representatives, his executor, or administrator with his heirs or devisees to be brought before the court, has never been deemed necessary upon any ground affecting the title of the creditor; or upon any principle having any injurious bearing whatever upon the creditor’s rights. During the life-time of a debtor, his creditor, who has obtained judgment against him, cannot be hindered or delayed in the recovery of his debt, by being obliged to take first one species of property, and then another, in execution, in order to obtain satisfaction; since there is no one kind of a *38 debtor’s property which is privileged from being taken in execution until another has been exhausted. It is clearly not necessary, in any case, during the life of a debtor to exhaust his personal estate as a means of coming at his realty, (d)
But if the objection now taken be well founded, then it necessarily follows, that the death of a debtor materially curtails the rights of his creditors; since on that event a creditor’s title to relief must depend not merely upon the fact of his debtor having left property enough to pay all his debts; but upon the fact of its being alleged and shewn, that his personal estate is insufficient for that purpose; and also upon its being alleged and shewn, that he, the plaintiff, had, with all due diligence, endeavoured to obtain satisfaction from the personal estate of the deceased; in order thereby to lay a foundation whereon to proceed against the realty.
Hence it follows, if this proposition be correct, that the rights of a creditor are materially affected by the death of the debtor. If the law be so, as between creditor and debtor, then it is certainly true, according to the general rule, that a plaintiff must set forth every fact which constitutes any material portion of the title upon which he asks relief, that he should, in a creditor’s suit, expressly allege and shew, that the personal estate of his deceased debtor was insufficient to pay his debts; and that he had used all due diligence in endeavouring to obtain payment from his personal estate to enable him to obtain a sale of his real estate for that purpose.
The matter here presented is one of much importance, since it is not confined to a mere form of practice; but involves the rights of creditors generally; and therefore requires to be fully investigated and carefully considered.
According to the common law, as between individuals, lands were in no way liable to be taken in execution and sold for the payment of debts, (e) This total exemption of real estate from any such liability, it is said, was a necessary consequence of the principles of the feudal system, which system, softened and divested of most of its odious and pernicious principles, having been incorporated into our code, (f) lands were, in like manner, exempted here as in England from being taken in execution and sold for the payment of debts, (g) According to the feudal sys *39 tem a feudatory was not permitted to alien the land so held by him, but was bound as tenant to render certain services to the king for the benefit of the public; and therefore it was held to be contrary to the nature of the tenant’s holding, and prejudicial to the government, as interfering with the public revenue, to suffer the land to be taken in execution and sold for the payment of his debts; and also, because, looking to the inalienable nature of his real estate, it could not be presumed, that he had been trusted by his creditors any further than with a view to his personal estate. These reasons, it is obvious, ceased when the principles of the feudal system were so far relaxed as to allow to the fee simple owner of land, an absolute and unqualified right of alienation at his pleasure; nevertheless, the exemption was continued in full force. (h) But apart from these reasons for exempting land from being taken in execution, derived from the feudal system, it is said, that a creditor was not, by the common law, permitted to take away, by execution, the possession of his debtor’s lands; because it would hinder him from following his husbandry and tillage which are so beneficial to the commonwealth, (i) This being a reason for the exemption derived from the nature of things, applies as forcibly now and here as at any former time or other place. And although it may be admitted to be by no means a sufficient cause for a total exemption of lands from being taken in execution; yet it is certainly reasonable, that lands should not be so levied upon and sold as materially to interrupt their cultivation, or endanger the loss of a then growing crop. (j)
In England, the common law was, in this respect, so far altered as to allow the lands of a debtor to be taken under an elegit or otherwise, and delivered to the creditor at an extended, or estimated annual value, until the whole debt was paid. Those English statutes were introduced and practiced under in Maryland; but none of them authorized the selling of lands so taken in execution in like manner as personal property. (k) In all cases, where, according to those English statutes, lands might be taken in execution and extended, the judgment gave to the plaintiff a general lien upon such lands as the defendant then held, or at any time *40 afterwards acquired while the judgment remained in force. (l) And consequently, if the defendant died after judgment, and before execution or satisfaction, the plaintiff might, as it would seem in England, and certainly here, without first proceeding against the executor or administrator to obtain satisfaction of his judgment, at once sue out a scire facias against the heirs and terretenants of the land descended; and, upon no good cause being shewn, have execution against the lands; and thus enforce payment from the real assets, although there might be more than a sufficiency of personal estate of the deceased to discharge all his debts. (m)
But as those English statutes, which gave the right to have the lands extended for the satisfaction of debts, comprehended all the lands of the debtor, it therefore followed, that if, on his death after judgment, his lands passed into the hands of several, who, because of their being alike liable, were entitled to contribution from each other, they should be all summoned by scire facias; and if any one of the several heirs should be within age, the parol should demur as to all. (n) This right to contribution is an equity arising between those who are alike liable, because of the real assets in their hands. It is therefore only necessary, that the creditor should merely have them summoned, to enable each defendant to obtain justice for himself as against the others, without prejudice to the claim of the creditor; since it rests with the defendants alone to insist upon and have the contribution adjusted among themselves; for, if they, or any of them, on being summoned, fail to plead, that they are not liable, or that there are others who are liable, and who have not been warned; or to shew the extent of the contribution, the plaintiff shall have his judgment against those only who have been -warned, which will be conclusive against them, (o)
But by the common law, where a debtor, by a writing under his hand and seal, binds himself and his heirs for the payment of a debt and dies, leaving real estate to descend to his heir, such heir is bound, in respect of such real assets descended, for the payment of the debt. And such bond creditor may, at his election, sue the *41 heir, or the executor or administrator of the deceased debtor. So that if the executor has assets, and the heir also has assets, it is still at the election of the creditor to have his debt of either the one or the other as he pleases. In the suit against the heir it is not necessary to allege, that the executor has no assets ; for even if he has a sufficiency of assets, it is no defence for the heir. On the plaintiff’s establishing his claim he may have judgment, that all the lands so descended be extended, at an estimated annual value, and delivered to him to hold until his debt is paid. And when the heir has paid debts to the value of the land he may hold it discharged from all other claims of the creditors of his ancestor. But, in such case, if any one of the heirs be an infant the parol shall demur as to all until such minor attains his full age. This is a mode of proceeding given by the common law to a specialty creditor against the heirs of the deceased debtor, by which such a creditor’s title to obtain satisfaction from the property of the deceased is thus extended indiscriminately over the whole of his real and personal estate, (p) But if the heir pays such a bond debt of his *42 ancestor, then he may, by bill in equity, upon the ground, that the personal estate is there considered as the primary and natural fund for the payment of debts, obtain reimbursement from the personal estate, if any, in the hands of the executor or administrator. (q)
If however, a specialty creditor to whom the heir is bound, instead of suing at law, files his bill in equity to obtain satisfaction, by having the whole estate of his deceased debtor, real and personal, administered in equity for the benefit of himself and all other creditors; and, for that purpose, as he must, calls before the court the executor or administrator with the heir and devisee, if any, of the deceased, the court will, having both funds under its immediate and absolute control, without any material delay or injury to the creditors, order the personal estate, as the primary and natural fund, to be first applied, as far as it will go, in satisfaction of the debts; and thus, at once, place the burthen where it ought to rest; "without allowing the creditors to enforce payment from the heir, as at law; and then leave him to seek reimbursement from the personal estate, (r) But if any one of the heirs, or, according to *43 our act of Assembly, any other person claiming the real estate by purchase, be a minor, he cannot be compelled to answer the suit, but the parol shall demur as to all, until each infant attains his full age. (s)
It must, however, be borne in mind, that this mode of administering the assets of a deceased debtor, by applying his personal estate first to the payment of his debts, can only be done on a creditor’s bill filed in this court; and according to all the authorities, it is only adopted here for the purpose of preventing that circuity of action, which would be occasioned if the creditor were permitted to obtain satisfaction from the real estate, and thereby leave the heir to take his place, and go against the personalty for reimbursement. It is founded upon that equity alone, which subsists between the real and personal representatives of the deceased, to have the personal estate, as the primary and natural fund for the payment of debts, first applied for that purpose. And being an equity which arises only as between the heir and executor, it is one by which the rights of a creditor can in no way be affected, and with which he can have no concern; since it is well settled, that upon the establishment of his claim in point of fact, he has a clear legal right to enforce satisfaction, at his election, from either the heir or the executor. The court has but two points to considér. First, that there is a debt presently due — and secondly, not to sell real estate, while there is personalty available. But this does not mean, that if debts are due to the estate, the creditor is not to be satisfied until they are collected. The court will order immediate application of such funds as are immediately available, and then resort to the real estate, without waiting for the coming in of other personal effects, which may become capable of being applied within a shorter or longer period of time. (t)
And, therefore, as it is not necessary at law for a creditor to found his title to recover upon any allegation or proof, that the executor has not a sufficiency of assets, (u) so it cannot be necessary, that he, the creditor, should make and sustain any such allegation to enable him to obtain satisfaction out of the real estate by the aid of a Court of Chancery. On the contrary, according to the English precedents, so far from the creditors alleging an insufficiency of the personal estate for the payments of debts, as a foun *44 dation for a sale of the realty for that purpose, it is there usually charged,- in a creditor’s bill, that the deceased’s personal estate was more than sufficient to satisfy all his debts, as well those due by specialty as by simple contract, &c.; but, that if the personal estate be insufficient, that then the specialty debts be paid out of the deceased’s real estate, that the executor account; that the real estate be sold, &e. And, consequently, in all such cases, if it be supposed, that there are personal assets which may be applied in aid of the realty, the issue, as to that fact, founded on this equity, must be presented by the heir; and be made up between him and the executor or administrator alone, as it clearly lays with the heir only to allege and shew that fact for his own benefit; which if he fails to do, the creditor, whose legal rights cannot in any way be impaired or controlled by the court, must be allowed to obtain payment by a: sale of the realty. (w)
Thus stood the 3aw of Maryland until the year 1732, when the British parliament passed an act, by which it was declared, ‘that from and after the said twenty-ninth day of September, one thousand seven hundred and thirty-two, the houses, lands, negroes and other hereditaments and real estates, situate or being within any of the said plantations belonging to any person indebted, shall be liable to and chargeable with all just debts, duties, and demands of what nature or kind soever, owing by any such person to his majesty, or any of his subjects, and shall arid may be assets for the satisfaction thereof, in like manner as real estates are by the law of England liable to the satisfaction of debts due by bond or other specialty, and shall be subject to the like remedies, proceedings and proeess in any . court of law or equity, in any of the said plantations respectively for seizing, extending, selling or disposing of any such houses, lands, negroes and other hereditaments and real estates, towards the satisfaction of such debts, duties and demands, and in like manner as personal estates in any of the said planta *45 tions respectively are seized, extended, sold or disposed of for the satisfaction of debts.’ (x)
This British statute was first introduced, used and practised under here about the year 1740, and has been continued in full force ever since. (y) The previous English statutes which gave the right to have lands taken in execution and delivered to the creditor at an extended annual value until the debt was paid, if not virtually repealed by this act, yet having given a remedy so inferior, or comparatively so ineffectual, wrere never resorted to after the introduction of this statute; no previous legislative enactment had expressly authorized a creditor to have his debtor’s lands taken in execution and sold for the payment of the debt; although it is said that the Court of Chancery would, under some circumstances, accelerate the payment of the debt by ordering a sale of a moiety, or so much as might have been extended at law. (z) This statute removed all difficulty, in that respect, by putting simple contract and bond creditors upon the same footing, and by allowing the real estate to be seized and sold for the satisfaction of debt in like manner as personal estate.
Under this law it seems, however, to have been always considered here, that an heir should not be held liable to an action at common law by a simple contract creditor, merely in respect of the real estate descended, (a) and therefore, as the statute had expressly declared, that the real estate should be liable to all debts in like manner as real estates were by the law of England liable to the satisfaction of debts due by bond, it necessarily followed, that simple contract creditors could only obtain satisfaction from the real estate of their debtor, in the hands of his heirs or devisees, by a creditor’s bill in Chancery, governed by rules here, similar to those by which a creditor’s bill by a bond creditor in England were regulated, and as this statute was avowedly made for the benefit of creditors, to enlarge, not to narrow their remedy, it must have left their title and their right to enforce payment, at their election, from the real or the personal estate, unimpaired and unprejudiced by any equity which then existed only between the real and personal representatives of the deceased; or which arose only out of the mode of administering the estate for the benefit of the heirs *46 alone. (b) And. as this statute deprived infants of none of their privileges, it followed, that if any one of the claimants of the real estate proposed to be charged, was a minor, the parol should demur for the benefit of all until he attained his full age. So too, as to all other particulars, not expressly or necessarily embraced by this statute, the then existing law remained in all respects unaltered.
After which it was declared by an act of Assembly, that persons under age seised of any lands chargeable with the payment of money ; and therefore, liable to a decree for a sale, should by direction of the Court of Chancery, on the petition of the person entitled to any money with the payment whereof the said lands were chargeable, convey and assure such lands in such manner as the court should direct to any other person; and such conveyance should be as good and effectual as if such infants were at the time of full age: provided, that no direction, as aforesaid, should be given in case of any infants seised of any lands subject to the payment of money, unless it should appear that the guardian of such infant had consented thereunto; and also, that such infant would not sustain any inconvenience from such direction, (c) Under this law, which relates only to proceedings in Chancery, any lands, subject to the payment of debts, held by an infant, might have been sold, with the consent of his guardian, without allowing to the infant the privilege of having the parol to demur until he attained his full age. But this act contains not the slightest allusion to any distinction between the application of the real and personal estate of a deceased debtor to the payment of his debts; nor is susceptible of being so construed as to have any bearing injurious to the legal rights of his creditors; or so as to make the least change in that equity, which arises in a creditor’s suit, between the real and personal representatives of the deceased, by which the heirs are allowed, for their own peculiar benefit, without prejudice to creditors, to have the personal estate first applied in payment of his debts. In these respects the then existing principles of law and equity have not been altered or affected in any way whatever, by this act of Assembly.
By the act of Assembly which prescribes the mode of reviving actions at common law, which may have abated by the death of *47 either party, it is provided, that upon the death of either plaintiff or defendant in any such action, involving the title to land, if the heir or devisee of the deceased be an infant, such action shall not be tried during his minority; unless his guardian, or next friend, satisfy the court, that it will be for his benefit, (d) And in the same act of Assembly it is declared, that in the payment of the debts of deceased persons, no creditor shall be entitled to any priority, except such as have obtained judgment against the deceased; nor shall any preference be given to creditors in equal degree by the executor or administrator, who shall observe the following rules, where it is apprehended the deceased has not left personal estate sufficient to satisfy the debts due by him; to wit; to pay no debt until the end of twelve months after the death of the deceased; to give notice for all his creditors to produce their claims after the expiration of that time at a certain day and place properly authenticated, when the executor shall first discharge all judgments in full, or equally and in due proportion; and next shall divide the assets equally among all other creditors, without priority or preference, &c. And if any executor or administrator shall not observe these rules, he shall be liable to pay, out of his own estate, the loss sustained by any creditor in consequence thereof, (e) And in case there be no personal estate sufficient to pay the debts of the deceased, and he shall have left lands to descend, or hath devised the same, and the heir or devisee may be liable to pay the debts of the deceased, to the value of the lands descended or devised, then such heir or devisee, being of full age, shall pursue the rules aforesaid, in the payment of the debts of the deceased; and upon default, such heir or devisee shall be liable to pay out of his own estate the loss sustained by his misconduct or neglect. And that all courts of law and equity shall observe the directions of this act. (f)
It is clear, from the language of this law, that, as regards the privileges of infants, its provisions are confined altogether to actions at common law; and that, as regards the administration of deceased persons estates, it merely prescribes rules for the payment of debts, by which executors and administrators, as well as adult heirs and devisees, so far as they may be liable in respect of assets,, are alike to be governed. This law apparently recognizes the rule in equity, that the personal estate is the primary and natural *48 fund for the payment of debts; but-there is no expression in it • which can be so construed as to lessen or impair the previously existing legal rights of creditors; or which intimates an intention to prevent a specialty creditor from suing and enforcing payment at common law from the heir alone, in respect of real assets descended to him; or which would prevent a simple contract creditor, under a .creditor’s bill in Chancery, from obtaining relief upon the same principles, and to the same extent as a bond creditor from the heirs or devisees of the deceased in respect of the real assets' héld by them. -It may bp safely assumed, therefore, that this act of Assembly has made no change whatever in the law as regards the matter now under consideration.
By another act of Assembly it has been enacted, that if any person hath diedj or shall hereafter die, without leaving personal estate sufficient to discharge the debts by him or her due, and shall leave real estate which descends to a minor, or person being idiot, lunatic, or non compos mentis, or who shall afterwards become non compos mentis, or shall devise real estate to a minor, or person being idiot, lunatic, or non compos mentis, or who shall aftérwárds become non compos mentis, the Chancellor shall have full power and authority, upon application of any creditor of such déceased person, after summoning such minor, and his appearance by guardian, to be appointed as aforesaid, and hearing as- aforesaid, or after summoning the person being idiot, lunatic, or non compos'mentis, and his appearance by trustee, trustees or committee, to be appointed as aforesaid, and hearing as aforesaid, and the jiistice of the claim of such creditor is fully established, if, upon consideration of all circumstances, it shall appear to the Chancellor to be just and proper that such debts should be paid by a sale of such real estate, to order the whole or part of the real estate, so descended or devised, to be sold for the payment of the debts due by the deceased.’ (g)
On adverting to the law as it has been shewn to have existed when this -act of Assembly was passed, it will be seen, that a specialty creditor, to whom the heir was bound by the contract, had an unquestionable right to proceed, at his election, against the heir, or the executor of his deceased debtor; that there being a sufficiency of personal' estate to pay the debt was no defence for the heir; that if the heir paid the debt he might, by bill in *49 equity, obtain reimbursement from the personal estate, if any, in the hands of the executor or administrator; that if a creditor sued in equity, and it was alleged and shewn, by the heir, that there was personal estate, then that estate was first applied, and the realty only sold to make up the deficiency; and that in all cases, where any one of the claimants of the real estate wras an infant the parol should demur as to all until such minor attained his full age.
Hence it appears, that a creditor’s right to proceed against the real estate of his debtor in no way depended upon the insufficiency of his personalty, and it is most manifest, from a fair reading of this act of Assembly, obviously made for the benefit of creditors, that the legislature could not have intended to throw in the way of a creditor any new obstacle or hindrance to the recovery of his debt in any form whatever. It could not have been intended to engraft upon the former law a condition precedent, requiring a creditor to show, as a foundation of his claim to obtain satisfaction from the realty, that the personalty had been exhausted; or to require him first to shew the amount to be raised by a sale of the realty to make up for the deficiency of the personalty; although the court may, to avoid unnecessary injury to the heir, and at his instance, first call in the creditors and have an account of the personal estate taken, in order to ascertain how much of the real estate should be sold. (h) A specialty creditor might, at his election, by an action at common law, enforce payment from the heir, without regard to the amount of the personal assets held by the executor or administrator. And, if such specialty creditor went into a court of equity for relief, he carried with him there this legal right to obtain satisfaction unembarrassed by any question as to assets between the heir and executor. The Court of Chancery, recognizing the existence of such legal right, always so regulated its proceedings, as, in doing justice between the heir and executor, in no way materially to delay or prejudice the claims of creditors.
Simple contract creditors having, by the British statute of 1732, been put upon a footing with specialty creditors, the Court of Chancery here, in creditors’ suits, always, since the adoption of that statute, applied the same rules and principles to the claims of *50 simple contract creditors, that it had before applied to cases arising on the claims of specialty creditors. And consequently, it never, in any case, threw upon a creditor the necessity and burthen of alleging and proving the insufficiency of the personal estate of the deceased, as forming an essential part of his title to obtain satisfaction by a sale of the realty; because that was a fact which, from the nature of things, unacquainted as he must be with his debtor’s private affairs, it would, in most cases, be impracticable for him to shew; and was, therefore, a matter with which he had no concern. And as equity is bound to follow the law, the court could not upon any principle whatever throw upon the creditor any such burthen. The allegation of the sufficiency of the personal estate can only come from the heir, because it would be of no avail to any other party; and as the benefit which the heir was allowed to derive from it, was only as against the personal estate, the issue as to the truth of such allegation was therefore, one which could only, with propriety, be made up between the heir and the executor or administrator. The first clause of this act of Assembly, it is evident, merely refers, in general terms, to these principles of equity, without making the least change in any of them, or intimating, that a creditor, in suing by bill in Chancery, was to encounter any new obstacle in any form. So far, therefore, this act of Assembly recognizes and affirms the then existing law without making any alteration in it whatever.
In regard to persons non compos mentis, as spoken of in this act, it will be sufficient to observe, that although the Chancellor, in the exercise of his jurisdiction, in cases of lunacy, has no power to exempt either the person, or the estate of the lunatic from the claims of his creditors; yet, where circumstances permitted, it had always been deemed to be within the scope of his authority so to order the management, or sale of a lunatic’s estate as to secure to him a maintenance from the proceeds of his property; and, for that purpose, to postpone the payment of his debts by an immediate sale or application of the capital of his estate as far as practicable. (i) It is to these dilatory proceedings of the court, for the benefit of persons non compos mentis, that this provision of this act relates. And as it merely authorizes a sale to be made in cases where, independently of this act, a sale might have been enforced under the statute of 1732, this act must be understood as only in *51 tending to declare, that there shall be no postponement or delay, for the benefit of a person non compos mentis, to the prejudice of creditors. Considered in that way, and it can be considered in no other, it has certainly made no very material change in the law. (j)
This act declares, that on the justice of the claim of such creditor being fully established, if, upon consideration of all circumstances, it shall appear to be just, that such debt should be paid by a sale of the real estate, the court may order the whole or a part of it to be sold. A plaintiff must, in all cases, establish the justice of his claim; in all cases the order passed by the court must appear to it to be just; and in no case ought more of a debtor’s property to be taken from him than is necessary to pay his debts. In these particulars, therefore, this act of Assembly is simply an affirmance of the previously settled law, and nothing more.
But we have seen, that, under the law before this act of Assembly was passed, if any one of the claimants of the real estate was an infant, the judicial proceedings were to be stayed, or the parol demurred, as against all until the minor attained his full age. This privilege of infancy had, in England, been considered as a pernicious and grievous hindrance to creditors; (k) and had become much more so here after the adoption of the statute of 1732, when it was so frequently relied on to break, for a time, the promise of ample justice held out by that statute. The act of Assembly which allowed of a sale of the real estate during the infancy of the heir, with the consent of his .guardian, was a poor mitigation of the evil, as it still left the creditor at the mercy of his debtor. But this privilege of infancy, if it had been suffered to remain, at this day, after the introduction of partible inheritances, by the act to direct descents, would have been still more grievous, or altogether insufferable, as it might have been interposed as a suspension of the relief prayed by a creditor, in so many cases, and for such a length of time, in the great majority of them, as to have amounted to an almost total repeal, as to the heirs of deceased debtors, of the statute of 1732, by which lands were made liable to be sold for the payment of debts. But this act of Assembly has authorized the appointment of a guardian to answer and defend for the infant heirs, so as to enable the creditor, at once, to substantiate his case, and establish his claim; and thereupon to obtain a decree for a sale *52 of the real estate, in like manner as if the heirs were of full age, without allowing the parol to demur. In this respect this act of Assembly has made a most' important and valuable change in the law in favour of creditors; and this is indeed the only material alteration which it has made in the pre-existing law.
Owing to some strange mistake as to the operation of what appears to be the very clear and unambiguous language of the statute of 1732, a notion appears to have been entertained by a few, and for some time, that as it was only under this act of Assembly, that the real estate of a deceased debtor could be sold for the payment of his debts; and that as its provisions applied only to infant heirs; that, therefore, there was no method by which a simple contract creditor'could obtain satisfaction by a sale of his deceased debtor’s real estate in the hands of his adult hews. (l) To remove all misapprehension of the law, in this particular alone, it was in relation to this matter specially declared, ‘That the provisions of the fifth section of the said act (1785, ch. 72,) and of the séveral acts supplementary thereto, in relation to the sales of real estate, be extended to defendants of full age.’ (m) But the legislative enactment thus extended was manifestly made, as has been shewn, for the benefit of creditors; and therefore, if its language could be deemed ambiguous, certainly it could not be so construed as to curtail or embarrass their rights. And as it has been shewn, that there being assets in the hands of the personal representative could not prevent a specialty creditor from enforcing payment from the heir, who was bound to the extent of assets descended; and that there was nothing in the act, thus extended, which could have been intended to diminish that legal right of specialty creditors, or to circumscribe its operation in favour of all creditors, in a Court of Chancery, since the adoption of the statute of 1732; it necessarily follows, that, by having its provisions extended to defendants of full age, whatever of doubt or misapprehension may have been removed, no alteration whatever can have been made in the law, in this, or in any other respect, prejudicial to the interests of creditors.
Before we take leave of this subject, it may be well to advert to the case where there is no heir or devisee of the deceased, and the real estate of the deceased debtor reverts by escheat to the state— although in England and in Maryland, the-state, upon the principles of the feudal system, took by escheat clear of the claims of *53 general creditors, it seems to have been a matter of course to direct all creditors to be paid out of the confiscated or escheated property of their debtor. Yet as the state could not be sued or in any way coerced to make any such application of property, taken or fallen into its hands; (n) it was declared, that in case any person should die seised of any lands intestate, without heirs and indebted, and not leave personal estate sufficient to pay his debts, any of his creditors might file a petition in Chancery suggesting such facts, and praying that such real estate might be sold for the payment of the debts of the deceased; and the Attorney-General upon notice should appear and defend. Upon which the Chancellor being fully satisfied of the truth of such facts might order a sale of the real estate, &c.; which if not sufficient to pay all the debts, the money arising from the sale should be equally distributed among all the creditors in proportion to their debts without any preference ; and upon any certificate of survey being made and returned in consequence of an escheat warrant, any creditor of the deceased might enter a caveat to the same, &c. (o) After the passing of some private acts to remove difficulties in cases of this kind; (p) it was, by another general act declared, that in case any person seised or possessed of land, or having an equitable interest therein should die without leaving any known heir or devisee, and without leaving a sufficient personal estate for the payment of his debts contracted within this state, or with any of the citizens thereof, the Chancellor upon the application of any such creditor might order the real estate to be sold, &c. (q)
These legislative enactments, on a careful consideration of them, it will be perceived, do, in effect, declare, that a creditor may, where there are no heirs or devisees, proceed against the state itself to obtain satisfaction from the realty of his deceased debtor in the hands of the state. And this privilege has been granted to creditors by the first of these laws, so far as it may not have been virtually repealed by the last of them, upon the terms, if there should not be enough to pay all, that the proceeds of sale should be distributed in due proportion, without any preference; and that none *54 but such creditors as are citizens of this state (r) should be allowed to come in and have the real estate sold for the payment of their debts in the manner precribed. These legislative provisions it is obvious have relation to peculiar cases, to which the state is a party, and do not in any way affect the rights of a creditor against the heirs or devisees, executors or administrators of his deceased debtor.
From this review of the law in relation to the matter now under consideration, it is therefore perfectly clear, even admitting that the defendants have relied upon the fact, that the plaintiffs had failed to allege and prove, that the personal estate of William Wyse deceased, was insufficient to pay his debts, it can be of no avail to them as a defence against the claim of these plaintiffs to obtain satisfaction by a sale of the real estate of the deceased in their hands; since, if it be true, that there is a sufficiency of personal estate to pay the debts of the deceased, it rests with these heirs alone to allege and shew that fact, and how that estate may be now so applied for the saving of their own interests. But as these heirs have failed to do so, the real estate in their hands must certainly be held liable, at least so far as the personal estate may be insufficient, as it now appears to be upon the face of these proceedings.
But the proofs show that although the personal estate might originally have been more than sufficient to pay this debt, it has since, by some means or other, fallen greatly short. Admitting then that there has been a waste of the personal assets; do these heirs and next of kin stand here as persons having no interest in the personalty, or having no concern with this apparent misapplication of it ? And has the conduct of the plaintiff Tessier, been such, that the loss must fall entirely upon him ?
It is clear that an account of an administrator passed by the Orphans Court must be received as prima facie evidence of the then truth of the facts stated in it, at least as against the administrator; and therefore it must be assumed, until the contrary is shewn, that the administratrix Rachel Wyse, on the 29th of June, 1816, had in her hands a sufficiency of assets to pay this debt. But the strongest proof which could be adduced of that fact, would not preclude her from shewing, in answer to the claim of a creditor, made at a subsequent period, that she had since disbursed the whole amount, *55 then in her hands, in a due course of administration, so as to relieve herself from all liability. To discharge herself from all claims in respect of the assets thus admitted to have been in her hands, it certainly cannot be deemed to be incumbent upon her to do so by subsequent accounts passed by the Orphans Court; it would be sufficient for her to shew, by any kind of legal proof, that she had fully and properly administered the assets then on hand. There is here, however, no such proof of her having properly applied any portion of the assets held by her on the 29th of June, 1816. But all the peculiar circumstances of this case must be carefully considered in order to obtain a clear view of the manner in which the personal estate then in the hands of the administratrix Rachel Wyse, has been consumed and reduced to the amount now found in the hands of the adminsistrator, de bonis non, Allender.
It appears, that the deceased debtor William Wyse, at the time of his death, was seised and possessed of a considerable real and personal estate, which passed into the hands of his widow as administratrix, and his eight children, now here as defendants, and who "were his heirs and next of kin; most of whom were then under age, and all of whom have been maintained, and the minors educated, as we are left strongly to infer, from the estate by their mother and natural guardian, the administratrix; that the administratrix Rachel Wyse, with this defendant John M. Wyse, by their petition addressed to this court, before the institution of this suit, stated, that the personal estate of the deceased was not sufficient to maintain and educate his children; and therefore they prayed to have the tract of land called Deer Park sold, as directed by him for that purpose; which was decreed accordingly; thus distinctly giving the court to understand, in that suit, that the mother and natural guardian of these infants had, had no hesitation in applying the personal assets, in her hands as administratrix, to their maintenance and education. And it further appears, that this plaintiff Tessier, had pressed for the payment of his debt, by suing and obtaining judgments upon his collateral security, which judgments have, by accident, been left wholly ineffectual. Hence, although it is not directly shewn how the children were maintained; yet on looking to the nature of the estate as described in the inventories and proceedings, and to the probable cost of maintaining and educating them for about eight years, the irresistible presumption is, that the amount of the difference between the assets shewn to have been in the hands of Rachel Wyse, on the 29th of June, 1816, and *56 the assets shewn to be in the hands of Joseph Mender, on the 23d of January, 1824, had been consumed chiefly or altogether by these very heirs and next of kin of the deceased, who are now here as defendants resisting the payment of this claim from the real estate in their hands, (s)
A creditor cannot be held bound to guarantee the faithful and proper administration of his deceased debtor’s estate; and therefore where, without any fault or connivance of his, the executor or administrator wastes the personalty, the entire residue of the estate real and personal must be held as absolutely liable to such creditor, in all respects, as if no such waste had been committed, or as if the estate had been justly applied in a due course of administration, (t) But here, under these circumstances, a court of equity cannot, certainly, tolerate such a defence as this, that there was originally a sufficiency of personal estate to pay all the debts of the deceased, coming, as it does, from defendants who are both heirs and ■.next of kin, and for whose maintenance and education the personal estate had been thus reduced, so as to exclude a creditor from the real estate in their hands, upon- the ground of there having been originally a sufficiency of personal estate to pay the debt. Because if there has been, in contemplation of law, a waste of the personal estate, it was a misapplication of it in which they have largely participated; and because, if there has been any negligence in the plaintiff Tessier, it-was a sort of indulgence by which they have been greatly benefited. Such a defence comes with an exceedingly ill grace from those of these defendants who are the heirs and next of kin of the deceased; and therefore cannot, under the circumstances in which they stand, be allowed to avail them, or the defendant Riston who claims under them, in any way whatever; (u) but the real estate in their hands must be held liable, as in cases where a third person is held liable, because of his collusion with the administrator in misapplying the assets. (w)
It is here stated and admitted, that the administratrix Rachel Wyse had in her hands all the personal estate of the debtor William Wyse deceased; and that she died without having accounted for what she admittéd she had in her hands on the 29th of June, 1816. *57 Her personal representative has not been made a party to this suit, nor has it been in any way stated, or shewn, whether she died intestate or not; whether or not administration of her estate has been granted to any one; or whether she left any personal estate to be administered or not. Yet according to the general rale, that an executor or administrator of a deceased executor or administrator of the deceased debtor, who, at the time of his death, had assets in his hands, must be made a party to enable the court to obtain a complete account of the whole personal estate of the deceased debtor, so as to do justice to all by having the personal estate applied in the first place in discharge of the inheritance; (x) it is clear, that the executor of administrator of Rachel Wyse should have been brought here as a party, if it does not appear upon the face of these proceedings, why such a party has not been, could not be, or need not be called before the court. (y)
We have seen that in the case of the death of a debtor, after judgment, the scire facias against the heirs and terre-tenants must warn them ail to appear; and that in equity the personal representative must be made a party with the heirs. But the reason why all the terre-tenants in the one case, and the executor or administrator in the other, must be brought before the court, is, as has been shewn, not to enable the creditor to recover; but that the defendants may be enabled to obtain the contribution from each to which they are respectively entitled, or that the personalty may he first applied in aid of the realty, so that the burthen may be at once placed where it ought to rest, and no unnecessary injury done to any one.
This considered as a right, existing only among such defendants, is one which a terre-tenant may decline to take advantage of; (z) or an heir may even verbally disclaim, (a) But where the reason ceases the law ceases; and therefore, it has been held, in a suit of this kind, that when two persons are entitled, one to the personal estate, and the other to the real, as the court cannot do justice to him who has the real estate, without taking an account of the personal in the first place, in relief of the real estate, both of them must be made parties; but that when the same person had both funds in him, it could not be indispensably necessary to *58 have any such account taken; because it was immaterial, as to such person, out of which fund, the real or personal estate, the debt was paid — and therefore the suit was allowed to proceed against his heir without making his personal representative a party. (b) So here, these children of William Wyse, deceased, being entitled to the real estate as his heirs, and to the personal as his next of kin, they had both funds in them, the realty by descent, and the personalty left in the hands of Rachel Wyse, the late administratrix, as next of kin: so circumstanced, it is immaterial as to them, out of which fund the debt is paid, whether from the real or the personal estate; since, as the plaintiff’s claim has been established, it must, in any event, be satisfied out of property to which they would otherwise be entitled. And therefore it appears upon the face of these proceedings, that the suit may well be permitted to go on without making the personal representative of Rachel Wyse, deceased, a party.
Supposing, however, all that has been said as to the liability of these heirs in respect of the real estate in their hands, to be erroneous ; yet there cannot be a doubt as to the liability of this administrator de bonis non, Joseph Allender, to the extent of the assets he admits he has in his hands. As against him, the claim of the plaintiff Tessier, is unquestionable, and in every point of view incontrovertible. The defendant Allender, it is true, states his ignorance of it in some particulars; but he has sustained no manner of defence against it; and therefore, upon every ground of law and equity, the plaintiff Tessier, must be entitled to obtain satisfaction to the full amount, or at least, to the extent of a due proportion of the assets admitted to be in the hands of this administrator de bonis non. So that if this bill were to be totally dismissed as against these heirs, and Riston who claims under some of them, as regards the realty; yet it must be sustained as a creditor’s suit against this administrator be bonis non, alone; since it has been firmly and well settled, by a long course of practice, that this court may, under a bill of this kind, assume the administration of the personal estate, for the benefit of all the creditors of the deceased, at the instance of any one creditor on behalf of himself and others, as against the executor or administrator *59 alone, (c) So far as tire personal assets in the hands of this administrator de bonis non will go, the plaintiff Tessier, must have awarded to him the relief he asks, even if he should have to turn round afterwards to recover the unsatisfied balance of his claim by a suit upon the administration bond of the late administratrix Rachel Wyse ; as I can see no plausible, legal or equitable pretext for requiring him to sue upon that bond before he is allowed to obtain the relief he now seeks against this administrator de bonis non.
Upon the whole I am clearly of opinion, that this bill may well be sustained against these defendants as a creditor’s suit, notwithstanding its alleged defect in not expressly charging, that the personal estate of the deceased was insufficient to pay his debts. The claim of the plaintiff Tessier, has been established by proof demonstrative and satisfactory; it has not been shewn that any fraud, wilful default, or breach of trust can be imputed to him; and it has been shewn that the personal estate of the deceased is, at this time, greatly inadequate to the payment of the plaintiff’s claim alone. From which it is clear, that the real estate must be sold, and may be at once sent into the market for that purpose, while the court is engaged in calling in the creditors, and having an account taken of the personalty. I shall therefore decree accordingly.
Decreed, that the defendant Joseph Jlttender, account with the complainants of and concerning the personal estate of William Wyse, deceased, and the proceeds thereof which may have come to his hands, or be claimed by him as administrator. That for the purpose of making a final settlement and distribution of said estate, the said administrator AUender, is required to make sale of all the goods and chattels now remaining in his hands. And the auditor is directed to state the account from the pleadings and proofs now in the case, and from such other proofs as the parties may lay before him. And the parlies are authorized to take testimony in relation to the account before the commissioners in the city of Baltimore, or before any justice of the peace elsewhere, on giving three days notice as usual: Provided, that the testimony be taken and filed in the Chancery office, on or before the first day of November next.
*60 Decreed, that the real estate in the proceedings mentioned, whereof the late William Wyse died seised, he sold, for the payment of his debts; that John Scott be appointed trustee to make the sale, &e., the terms of which shall be as follows: One-third of the purchase money to be paid in six months from the day of sale, one other third in nine months from the day of sale, and the residue in twelve months from the day of sale, the whole to bear interest from the day of sale, and to be secured by bond with surety to be approved by the trustee, &c. And the trustee, at the time of advertising the property for sale, shall give notice to the creditors of the said late William Wyse, to file the vouchers of their claims in the Chancery office, within four months from the day of sale.
The plaintiff Tessier, by his petition on oath, stated, that the defendants before and since the passing of the decree, and then were felling, carrying away and selling timber and other trees from the land of which William Wyse died seised, and which had been ordered to be sold by the decree; and that the whole of the real estate of the deceased would be'insufficient to pay the plaintiff’s claim. Whereupon it was prayed, that an injunction might be issued to restrain the defendant from committing waste, &c.
7th October, 1830.
Bland, Chancellor.
It has always been understood here, that such a decree as this on a creditor’s suit requiring the personal representative to account, and directing the real and personal estate to be sold for the payment of the debts of the deceased, virtually puts the property into the possession of the court, and places it under its immediate control and protection for the benefit of all concerned; so that, on application for that purpose, the estate may, until a sale can be effected, be disposed of to the best advantage, or immediately protected from injury and loss, (d) Therefore let an injunction issue as prayed.
The defendant Matilda Wyse, by her petition, on oath, stated, that she did not attain the age of twenty-one years until the 16th of June, 1830, and believes, from the information she has received, that she cari be enabled to produce testimony which would have an important bearing on the merits of the plaintiff’s claim, and tend to prove that he had no such claim as entitled him either legally or equitably to have a sale of the real estate of the de *61 ceased; and that the defendant Margaretta Wyse, died on the 19th of April, 1830, and her representatives, as such, have not been made parlies. Whereupon it was prayed, that the decree might be rescinded, and the case reheard; and that she might be permitted to answer, &c.
Upon which an order was passed, directing that the matter of the petition should stand for hearing on the 12th of October then next; and that all further proceedings under the decree should be suspended until further order; provided, that a copy be served, &c.
13th October, 1830.
Bland, Chancellor.
The petition of Matilda Wyse, standing ready for hearing, and having been submitted on notes by the solicitors of the parties, the proceedings were read and considered.
It is admitted, that previous to the death of Margaretta, the case had been set down for hearing. It is not alleged or shewn, that the interests of Margaretta did not survive to the other defendants in the case; and besides her representatives, if they are in fact not these defendants, are not now here complaining of this decree.
The petitioner does not pretend to have discovered any testimony which she could not have had brought into the case and used at the hearing; nor does she, in any way, specify what the nature of that testimony is which she says would have an important bearing on the merits of the plaintiff’s claim. Such general and indefinite allegations cannot afford a sufficient ground for a rehearing. Although she was an infant, and had answered only by her guardian ad litem ; yet she had attained her full age nearly three months before the decree was passed; and even now she does not impute to her guardian or solicitor any mismanagement, or neglect of her interests. Under such circumstances, and without showing any special grounds, this application must be considered as coming too late. (e)
Formerly on a creditor’s bill to obtain the sale of lands charged with the payment of debts, the decree was never absolute, but nisi causa as against the infant heir, allowing him six months to shew cause after he attained his full age; when he was permitted to come in as a matter of course, and file a better answer, and have the case reheard upon the merits as thus newly presented ; or the parol was ordered to demur as to the real estate descended *62 during the minority of the heir. If, however, the heir neglected to come in, within a reasonable time after he attained full age, and shew cause against the decree nisi, he was precluded, and it would be held to be absolute. (f) But according to our act of Assembly, ■the parol cannot be ordered to demur, in a creditor’s suit, during the minority of an infant heir or devisee; nor can such an infant have a day allowed him to shew cause on his attaining his full age. In all cases coming under that act of Assembly, as this does, if the creditor establishes his claim, he is entitled to an absolute decree at once for a sale of his deceased debtor’s real estate, for the payment of his debts; (g) and therefore, although an infant, on his attaining full age, pending the suit, may be allowed to come in as of course, and to demur, plead, or answer, as he may think proper; (h) yet he cannot be permitted to do so, after a decree of this kind has been passed, without virtually abrogating the act of Assembly, which by placing infants upon a footing with adults, in this particular, does, in effect, require of them as well as of adults, that they should shew good cause in order to have any such decree rescinded, and the case reheard. In this case no such good cause has been shewn, and therefore,
It is Ordered, that the said petition he dismissed with costs; and that the order suspending the execution of the decree, be rescinded.
The defendants appealed, and for the manner in which the case was disposed of by the Court of Appeals, see Wyse v. Smith, 4 H. and, G. 295.

 Heath v. Percival, 1 P. Will. 683; Powell v. Evans, 5 Ves. 839; Wright v. Simpon, 6 Ves. 726; Tebbs v. Carpenter, 1 Mad. Rep. 290.

 Hammond v. Hammond, 2 Bland, 307.

 Owen v. Davies, 1 Ves. 82.

 jffahson v. Barnes, 3 G. & J. 359.

 Bac. Abr. tit. Execution A.

 Chart. Maryl. art. 5, 18; Kilty Rep. 146]; 1786, ch. 45. s. 1; Calvert’s lessee v. Eden, 2 H. & McH. 279, 366.

 Kilty Rep. 144.

 3 Blac. Com. 418, 420.

 2 Inst. 394.

 Rawlings v. Carroll, 1 Bland, 76, note; Dorsey v. Campbell, 1 Bland, 365; Swan v. Swan, 3 Exch. Rep. 443.

 11 Ed. 1; 13 Ed. 1, c. 18; 13 Ed. 3, slat. 3; 27 Ed. 3, c. 8 and 9 ; 36 Ed. 3, c. 7; 23 Hen. 8, c. 6; 2 Inst. 394 ; 3 Blac. Com. 418, 420; Kilty Rep. 143, 144, 151; 1715, ch. 23, s. 6.

 2 Inst. 469; Jefferson v. Morton, 2 Saund. 6; Uderkill v. Devereux, 2 Saund. 69, 71; Harris v. Saunders, 10 Com. Law Rep. 373.

 Bricknold v. Owen, Dyer, 208, pi. 15; Stileman v. Ashdown, Amb. 16; Panton v. Hall, Carth. 106; 2 Harr. Ent. 444, 749, 763, 767, 755.

 Co. Lift. 290; Bac. Abr. tit. Execution, B. 2, 4; Sir William Harbert's Case, 3 Co. 13.

 Bac. Abr. tit. Scire Facias, C. 5; Michel v. Croft, Cro. Jac. 506; Jefferson v. Morton, 2 Saund. 8, note 10; Averall v. Wade, 10 Cond. Chan. Rep. 498.

 Davy v. Pepys, Plow. 439 ; Luson’s Case, Dyer, 81, pi. 62 ; Quarles v. Capell, Dyer, 204, p. 2 ; Sir William Herbert's Case, 3 Co. 12; Davis v. Churchman, 3 Lev. 189; Haight v. Langham, 3 Lev. 303, 304; Buckley v. Nightingale, 1 Strange, 665; Smith v. Angel, 7 Mod. 41; Stileman v. Ashdown, Amb. 16; Kinaston v. Clark, 2 Atk. 205; Bac. Abr. tit. Heir and Ancestor, E; 2 Harr. Ent. 106.
Anderson v. Rawlins. — 19i/t August, 1695. — Jowles, Chancellor. — Whereas, heretofore, that is to say, on the 13th day of November, 1694, John Anderson, of Dorchester county, planter, did exhibit his bill of complaint, in the honourable Court of Chancery, against John Rawlins, son and heir of John Rawlins of the said county, planter, deceased, thereby setting forth, that whereas, the said John Rawlins the father, was, in his life-time, Seised and possessed of a parcel of land, called The Inheritance, lying on the east side of Chesapeake bay, and on the eastern side of Blackwater river, in Dorchester county, aforesaid, whose lines are in the said bill expressed, containing, and laid out for three hundred acres, more or less: and that the said John Rawlins, the father, did, in his life-time, to wit: about the year of our Lord 1680, for the consideration of ten thousand pounds of tobacco, to him, the said John Rawlins, well and truly paid, by the said John Anderson, the complainant, agreed to sell and convey the said three hundred acres, called The Inheritance, to the said complainant, his heirs and assigns forever. And also, that he, the said John Rawlins, would, in some short time after, by himself, or his attorney thereunto authorized and appointed, make to the said complainant a firm conveyance of the same according to law, to be acknowledged and recorded in the said County Court of Dorchester county aforesaid; but, that before the said conveyance was perfected, he, the said John Rawlins, died, leaving John Rawlins, his son and heir, an iniant, under the age of twenty-one years, by reason whereof the said complainant could not have a good estate made to him of the said three hundred acres of. land, till the said John Rawlins, the son, should be of full age. And whereas, John Rawlins, the son, being satisfied, that the said complainant had bought and paid for *42 the said land, did therefore assure the said complainant, that as soon as he came to age he would confirm the said land to the said complainant and his heirs forever, as aforesaid. And whereas, the said John Rawlins being since arrived to full age, hath been requested by the complainant to seal and execute a good and legal conveyance of the said land to the said complainant, and doth not absolutely deny to do the same; but is willing to do it.to the said complainant and his heirs forever; provided, he may be saved harmless from his father’s creditors. And forasmuch as the said complainant hath therefore prayed for the decree of this honourable court to force the said John Rawlins to complete the said conveyance to the complainant. And forasmuch as the said John Rawlins by his letter directed to the register of this honourable court, here in court produced and dated August the 13th, 1695, has declared, that he owns the said three hundred acres to have been bought from his father John Rawlins, deceased, by the complainant, and that he is content, that a decree of this honourable court shall pass, that the said John Anderson may have the said land to him and his heirs forever.
This honourable court upon hearing the whole matter in the bill and letter aforesaid contained, do order, adjudge and decree, that the said John Rawlins shall execute to the said John Anderson, such deed and conveyance of the said three hundred acres of land, as the said counsel of the said complainant shall devise or direct for the confirming the same to him and his heirs forever, with general warranty. And in the mean time the said complainant to hold and enjoy the said land free from all incumbrances whatsoever, to him and his heirs forever, according to the original contract made between the said complainant and the father of the said John Rawlins, as in the bill is mentioned.— Chancery Proceedings, lib. P. C. fol. 305.

 Howell v. Price, Prec. Cha. 477; S. C. Gilb. Rep. 106; Armitage v. Metcalf, 1 Cha. Ca. 74; Anonymous, 2 Cha. Ca. 4; Popley v. Popley, 2 Cha. Ca. 84; Wolstan v. Aston, Hard. 511; Edwards v. Warwick, 2 P. Will. 175; Bootle v. Blundell, 19 Ves. 518.

 Plunket v. Penson, 2 Atk. 51; Madox v. Jackson, 3 Atk. 406.

 1729, ch. 24, s. 16; Co. Litt. 290; 3 Blac. Com. 300 ; Markal’s Case, 6 Co. 4.

 Clanmorris v. Bingham, 12 Cond. Chan. Rep. 254.

 Davy v. Pepys, Plow. 439.

 Wolstan v. Aston, Hard. 611; Anonymous, 2 Cha. Ca. 4; Popley v. Popley, 2 Cha. Ca. 84; Mead v. Hide,, 2 Vern. 120; Tipping v. Tipping, 1 P. Will. 729; Edwards v. Warwick, 2 P. Will. 175; Knight v. Knight, 8 P. Will. 332; Anonymous, 9 Mod. 66; Williams v. Williams, 9 Mod. 299; Lutkins Leigh, Ca. Tem. Talb. 54; Galton v. Hancock, 2 Atk. 435; Stileman v. Ashdown, 2 Atk. 609; Walker v. Jackson, 2 Atk. 624; Daniel v. Skipwith, 2 Bro. C. C. 155; Rowe v. Bant, Dick. 151; Hamilton v. Worley, 2 Ves. jun., 63; Aldridge v. Wallscourt, 1 Ball & Bea. 312; 2 Fonb. 286; Will. Exrs. 1042; 2 Harr. Prac. Cha. 323; 2 Newl. Pra. Ca. 13; Willis’ Eq. Plea. 222; Clanmorris v. Bingham, 12 Cond. Chan. Rep. 254,

 5 Geo. 2, c. 7.

 Davidson’s Lessee v. Beatty, 3 H. &McH. 612.

 Stileman v. Ashdown, 2 Atk. 609; S. C. Amb. 16.

 Lodge v. Murray, 1 H. & J. 499; Gist r. Cockey, 7 H. & J. 140.

 Cox v. Callahan, 2 Bland, 51, note; Long v. Baker, 2 Haywood, 128.

 1773, ch. 7; 1778, ch. 22; Prutzman v. Pitesell, 3 H. & J. 80; Partridge v. Dorsey, 3 H. & J. 320, 305; Pue v. Dorsey, 1 Bland, 139, note

 1785, ch. 80, s. 2; 3 Blac. Com. 300.

 Altered by 1798, ch. 101, sub ch. 8.

 1785, ch. 80, s. 7; Webster v. Hammond, 3 H. & McH. 131.

 1785, ch. 72, s. 5.

 Strike’s Case, 1 Bland, 85; Galphin v. McKinney, 1 McCord, 294; Clanmorris v. Bingham, 12 Cond. Chan. Rep. 254.

 Shelf. Luna. 356; Ex parte Dikes, 8 Ves. 79; Ex parte Philips, 19 Ves. 123.

 Williams v. Whinyates, 2 Bro. C, C. 399.

 3 Blac. Com. 430: Plasket v. Beeby, 4 East. 485.

 Tyson v. Hollingsworth, 2 Bland, 327, note.

 1818, ch. 193, s. 2.

 Jones v. Goodchild, 3 P. Will. 33; Bedford v. Coke, 2 Ves. 116; Burgess D. Wheate, 1 Eden, 203; Middleton v. Spicer, 1 Bro. C. C. 202; Megit v. Johnson, 1 Doug. 542; Robert Fuller’a esse, 14 May, 1680; Land Record, lib. C. B. 45; John Webster’s case, 27 November, 1680; Land Records, lib. C. B. 60, 102.

 1785, ch. 78, s. 1.

 1789, ch. 33; 1792, ch. 44.

 1794, ch. 60, s. 3,6.

 Corrie’s case, 2 Bland, 495.

 Allender v Riston, 2 G. & J. 86.

 Hardwick v. Mynd, 1 Anstr. 112.

 Williams v. Williams, 9 Mod. 300; Daniel v. Skipwith, 2 Bro. C. C. 155.

 Elmslie v. M’Aulay, 3 Bro. C. C. 624; Doran v. Simpson, 4 Ves. 651; Alsager v. Rowley, 6 Ves. 749; Benfield v. Solomons, 9 Ves. 86.

 Williams v. Williams, 9 Mod. 299; Holland v. Prior, 7 Cond. Cha. Rep. 22.

— (y) Hammond v. Hammond, 2 Bland, 307.

 Jefferson v. Morton, 2 Saund. 9, note 10.

 Clinton v. Hooper, 3 Bro. C. C. 214; S. C. 1 Ves. jun., 188.

 Williams v. Williams, 9 Mod. 300; Daniel v. Skipwith, 2 Bro. C. C. 155 Holland v. Prior, 7 Cond. Cha. Rep. 25; Tyson v. Hollingsworth, 2 Bland, 330, note.

 1 Mad. Cha. Pra. 578; Metf. Plea. 166; David v. Frowd, 7 Cond. Cha. Rep. 8; Hammond v. Hammond, 2 Bland, 307; The Bank v. Dugan, 2 Bland, 254.

 Shewen v. Vanderhorst, 4 Cond. Cha. Rep. 461; Duvall v. Waters, 1 Bland, 76.

 Kemp v. Squire, 1 Ves. 206; Bennett v. Leigh, 1 Dick. 89.

 Fountain v. Caine, 1 P. Will. 504; Napier v. Effingham, 2 P. Will. 401; Bennet v. Lee, 2 Atk. 531; Brookfield v. Bradley, 4 Cond. Cha. Rep. 297; Kelsall v. Kelsall, 8 Cond. Cha. Rep. 58.

 1785, ch. 72, s. 5; Hammond v. Hammond, 2 Bland, 352; Kelsall v. Kelsall, 8 Cond. Cha. Rep. 61; Powys v. Mansfield, 9 Cond. Cha. Rep. 445.

 Harwood v. Rawlings, 4 H. & J. 126; Savage v. Carroll, 1 Ball. & Be. 548.