# WILLIAM D. MILLER and WILLIAM E. MAYHEW, *vs.* ANNE S. WILLIAMSON and others.

An assignment by a party as "*executor* and *devisee*," independent of any other fact, passes only his interest as *devisee*, or what the law authorises him to dispose of in his capacity of *executor*.

Apart from the act of 1843, ch. 304, an executor might sell, or raise money on, the property of the deceased in *the regular execution of his duty*, and the party dealing with him is not bound to inquire into his object.

But if the party dealing with him has *reasonable ground* for believing the executor intended to misapply the money, or was *in the very transaction* applying it to his own private use, he can take no advantage from the operation.

Miller and Mayhew, *vs.* Williamson, *et al.*

The fact that the executor executed the assignment to secure a debt due the assignees by a mercantile firm, of which he was a member, is sufficient, in contemplation of law, to notify them that he was about to commit a *devastavit.*

As a general proposition, a party is authorised to rely upon the disclosures of the public records in support of his title, but it is equally true that he is affected by the equities in others which these records exhibit.

An assignment by a party as "executor and devisee," is notice to the assignee of the will and its contents.

A husband is not a competent witness in behalf of the interest of his wife in her separate estate; the exceptions to the general rule are principally, if not exclusively, in cases where, she, if not permitted to testify, would be exposed, without remedy, to personal injury.

The declarations of the husband, made at the time he was passing his account as executor and taking a release from his wife, are admissible as part of the *res gestæ,* to show that the release was executed without consideration and as a matter of form.

Though a specific bequest of consumable articles vests the absolute property in the legatee for life, yet, if it be the apparent *intention* of the testator that the thing shall not be consumed, but shall go to the party in remainder, the courts will, in case of *danger,* compel the tenant for life to give security.

A *feme covert* has no right to dispose of her separate estate unless that power be given to her by the instrument making the settlement, and where such power is given it must be exercised in the manner specified in the instrument.

A mortgage debt was devised to the separate use of a married woman during her life and then over. HELD, that the executor ought to apply to the orphans court for an order to invest the money secured by the mortgage, and not to pay it over to the legatee for life.

A wife cannot recover from her husband arrears of pin-money where she has not yearly demanded it, but she is entitled to arrears of interest upon a mortgage debt part of her separate estate.

APPEAL from the Court of Chancery.

This appeal is taken from a decision of the chancellor, reported in 2 *Md. Ch. Decisions,* 94.

The facts of the case are briefly these: Mrs. Mary Ann Jones, by her will, executed in 1841, devised certain real and personal estate to her niece, Anne S. Williamson, wife of Charles A. Williamson, "for her sole and separate use, benefit and behoof" during her natural life, then to her said husband for life if he survived her, then after the death of the longest liver of them to Mrs. Williamson's children and their descendants,

if any, and if none, then $500 thereof to the appointee of her will, or failing such appointment, to her legal representatives, and the residue to the children of the brother and sister of the testatrix. Mr. Williamson was the executor of this will.

Among the property so devised was a mortgage for $7000, due the 17th of September 1848, to foreclose which a bill was filed by Mr. Williamson, as executor, on the 6th of March 1849. Upon this bill a decree was passed under which the mortgaged property was sold, on the 30th of November 1849. The mortgage debt then amounted to $9605.17, and the net proceeds of sale, $9123.90, were audited to Mr. Williamson, as executor of Mrs. Jones.

The fund thus in court was claimed by Mrs. Williamson, under the will of Mrs. Jones, and also by Miller and Mayhew, in virtue of an assignment, dated 1st of February 1849, of the mortgage claim to them, signed "Chas. A. Williamson, executor and devisee of Mary Ann Jones," to secure the payment of four promissory notes then outstanding, amounting to $5632.77, drawn in their favor by Williamson, Sutton & Co., a firm of which Williamson was a partner, and an order accepted by the trustee directing him to satisfy this assignment. They insisted that Williamson, at the time of this assignment, was, as he assumed to be, the sole and legal owner of the mortgage debt; that as executor of Mrs. Jones he settled a final account in the orphans court, on the 9th of October 1848, wherein he charged himself with $7000, the principal of the mortgaged debt, as cash received by him, and paid his wife $5761.90, the cash balance of the whole estate, and took her release therefor, dated 7th of October 1848, which was executed and acknowledged before a justice of the peace, and filed and recorded in the orphans court; that by virtue of this settlement he became the owner of the mortgage debt; that when he applied to them for the loan, he offered to secure it by an assignment of said mortgage debt, which they would not have taken but upon an assurance that he made it with the knowledge of his wife and after a full satisfaction of all her claims against it.

Mrs. Williamson insisted on her part, that the release was

executed by her without consideration. The parties entitled in remainder also claimed to have the fund invested for their ultimate benefit.

To support the claim of his wife Williamson was examined, and proved that nothing was paid by him to her in consideration of her release of October 7th, 1848, and that she never received any part of the property therein mentioned nor any security therefor; that he closed the account in the orphans court by his wife's release because the Register insisted on its being closed, and got his wife to execute the release as a matter of form; that his wife was never present in the orphans court in reference to the estate; that she executed the release at his request, and did not know of the assignment to Miller and Mayhew until after the failure of the firm of Williamson, Sutton & Co.; that he considered he had a right to the mortgage claim, it being personal property, and that he had a right to assign it both in his own capacity and as executor. This witness was cross-examined by Miller and Mayhew, but his testimony was excepted to by them on the ground that he was not a competent witness for his wife.

Mr. Glocker, a clerk in the Register's office, proved that he prepared the account passed by Williamson: the latter asked witness if he could charge himself with the mortgage, though it had not been collected, and witness told him he could do so, and transfer the mortgage to his wife and take her release; Williamson said the mortgage debt had not been collected or settled, witness did not know what arrangement had been made with Mrs. Williamson, but supposed the mortgage had been transferred to her when the release was signed. The mortgage was stated as cash, in order to close the account; the account was not passed until two years or so after it was prepared by witness. This testimony was excepted to, so far as Williamson's declarations were concerned, as hearsay, and further because his declarations to others are inadmissible on points wherein his own evidence would be so.

The chancellor decided in favor of Mrs. Williamson's claim, and Miller and Mayhew appealed. The above statement is

sufficient for the understanding of the opinion of this court, though a more full one is given by the chancellor in his opinion, in 2 *Md. Ch. Decisions*, 94.

The cause was argued before Le Grand, C. J., Eccleston, and Mason, J.

*Wm. F. Frick* and *Thos. S. Alexander* for the appellants, argued the following points.

1st. That at the time of the assignment by Williamson to the appellants of the mortgage debt, his duties and responsibilities, as executor of Mrs. Jones, had, by virtue of the final account settled by him in the orphans court, ceased and determined. That the effect of that settlement was to make said debt his individual property, and though it might be necessary and proper for him still to use his title of executor, in dealing with that mortgage, for the purposes of collection, or assignment, or sale thereof, yet the beneficial interest therein was his own, and he could no longer be charged with a *devastavit* in respect to any disposition he might make of it. 2 *Gill*, 134, *Ridenour vs. Keller*. 2 *G. & J.*, 86, *Allender vs. Riston*. 7 *Johns. Ch. Rep.*, 20, *Sutherland vs. Brush*. *Act of* 1843, *ch.* 304. 1 *Williams on Ex'rs*, 408.

2nd. That the legal intent and effect of the proceedings in the orphans court, of October 9, 1848, was this: That Mrs. Williamson, the legatee for life of the estate, and the wife of the executor, was fully satisfied for all her claims against the estate, for principal, and must be presumed to have waived all her claims against her husband for arrears of interest: for principal by receipt of the chattels, and cash balance without interest, found to be in the hands of the executor on final settlement; and for arrears of interest, by the annual support and maintenance which she received from her husband, from the death of the testatrix, up to the date of her release. That the legatees in remainder after that settlement had no further claim upon the executor, and their only protection for their rights was by a proceeding for investment of the principal of

the estate against the legatee for life. That by the mainte-
nance of his wife, the payment to her of $5761.90, and his
over-payment of debts and legacies, and his credit to the es-
tate of the principal of said mortgage as cash, the executor
became entitled to deal with said mortgage, and all arrears of
interest thereon as his own, and under the pleadings and evi-
dence, the assignment of the mortgage to the appellants must
be deemed to be valid, and the proceeds of sale to be appli-
cable to the payment, in the first place, of their claim.    6 *G.
& J.*, 25, *Boyd vs. Boyd.*    3 *Russ.*, 149, *Bartlett vs. Gillard.*
3 *Sim.*, 370, *Carter vs. Anderson.*    1 *Russ. & Mylne.*, 190,
*Lynn vs. Ashton.*    13 *Sim.*, 643, *Beresford vs. Archbishop of
Armagh.*

3rd. The averment of Mrs. Williamson, that her release
was executed without consideration, is unsupported by proof:
1st, because her husband cannot be a witness for her at all.
1 *Greenlf. on Ev.*, secs. 341, 345, *note* 1, *and sec.* 108, *note* 2.
Our *cross-examination* does not in equity make him our witness,
or estop us from excepting to his competency, where the
cross-examination was as to the subject upon which he had
been examined in chief.    2nd, because his evidence is inad-
missible to contradict his recorded oath, that he paid her the
sum mentioned in the release.    3rd, because his declarations
to Glocker on this point are not evidence.    If he cannot be a
witness *directly* to prove non-payment, how can his *declara-
tions* proved by some third person be used for this purpose?
How can he be a witness indirectly when he cannot be directly?
The declarations of a husband or wife are subject to the same
exceptions that their testimony is.    1 *Greenlf. on Ev.*, sec.
341, *note* 6.    Again these declarations were not part of the
*res gestæ;* most of them were made two years before the set-
tlement of the account and the execution of the release.    No
separate acknowledgment of the release by the wife was ne-
cessary.    *McQueen on Husband and Wife,* 66 *Law Lib.*, 89.
Where a wife executes a release *in pais,* there is no need of
a privy examination, and no case can be found sustaining such
a proposition.    But it is said because she had no *jus dispo-*

*nendi,* she could not execute the release. If no power is expressly given, Chancellor Kent says, the wife cannot dispose of her separate estate, (2 *Kent's Com.*, 165, 166,) but such is not now the law either in New York or in England. See 2 *Leigh,* 183, *Vizonneau vs. Pegram.* 12 *G. & J.*, 236, *Gray vs. Crook.* But the question here is, whether, when property is settled to the separate use of a *feme covert,* she has not the power to *receive it.*

4th. That the orphans court accounts, supposing them not to be correct and conclusive, as between Mr. and Mrs. Williamson, and open to review and resettlement as between them, are nevertheless binding and conclusive, so far as the rights of third parties, acquired under faith in them, are concerned. That the appellants dealt with Williamson, in the faith that he had a valid right to transfer the mortgage; and he had that right, on the supposition that the orphans court accounts were true and correct. They had actual knowledge, derived from Williamson, of the existence of these accounts, and dealt with him in the belief that they were true and fair. And even if they had not *actual knowledge* of their existence and nature, yet if they dealt with Williamson on the faith of his assurance that he had individually a right to the mortgage and a valid power to transfer it, they are entitled to the benefit of every act of Williamson and Mrs. Williamson, which gave him such right and power, and they are both estopped from denying the conclusiveness and validity of such acts. 9 *Gill,* 185, *Kurtz vs. Hillen.* That a *feme covert* is as much bound by fraud in a court of equity as a *feme sole,* see 1 *Drury & Warren,* 134, *Jones vs. Kearney.* 2 *Madd.*, 40, *Cory vs. Gertcken.* Our assignment is *prima facie* good, and are we not entitled to the benefit of a *presumption of notice?* Williamson told Miller he had full power to make the assignment, and this assurance was made upon the faith of the papers in the orphans court. If this assurance had been false, we should have been compelled to bear the loss, and where is the justice in saying we shall not have the benefit of them if true? We were bound by the state of the record,

and can we not take advantage of it, if in our favor when we should have been bound if it had been to our prejudice?

5th. That the claim of the legatees in remainder against the fund in court is no better than that of Mrs. Williamson, because there is no evidence to support their averment, that there was not payment in fact to Mrs. Williamson. And it is admitted by the chancellor that, if there had been such payment in fact, and that the appellants dealt with Williamson on the faith of such payment, and the final settlement made thereby in the orphans court, they are entitled to the benefit of their assignment. The legatees in remainder may have remedy against the executor on his bond, or against Mrs. Williamson for waste, but they cannot follow the fund into the hands of a purchaser from the executor.

6th. That if the legatees in remainder have a right to the investment of the sum of $6033.83 for their ultimate benefit, nevertheless the appellants are substituted to all claims of Mr. and Mrs. Williamson against the fund in court. That by means of her release, Mrs. Williamson must be presumed to have transferred to her husband, in consideration of his support and maintenance of her during that period, all interest on the principal of the estate from the death of the testatrix to the date of her release, inasmuch as she expressed herself fully satisfied and paid by receipt of the principal. That to the extent of all such interest in arrear, $2715.37, and his overpayments of the estate, amounting to $979.10, Williamson had acquired a right in the fund in court, and could therefore lawfully assign it to the appellants. 2 *Story's Eq.*, sec. 1396. 2 *Ves.*, *Sr.*, 190, Peacock vs. Monk. 3 *Mylne & Keen*, 543, Thrupp vs. Harman. 11 *Irish Eq. Rep.*, 511, Arthur vs. Arthur. 4 *Brown's Ch. Rep.*, 326, Squire vs. Dean. 3 *Johns. Ch. Rep.*, 93, Methodist Episcopal Church, vs. Jaques, and same case, 17 *Johns.*, 548, on appeal. 2 *Ves. & Bea.*, 36, Brodie vs. Barry. 1 *Macnaghten & Gordon*, 599, Caton vs. Rideout. A wife is not entitled to an account against her husband, for arrears of interest or pin-money, 3 *Russ.*, 149, Bartlett vs. Gillard. 3 *Sim.*, 370, Carter vs. Anderson.

*F. K. Howard* and *S. T. Wallis* for the appellees, argued the following points:

1st. That the whole claim of the appellants is predicated upon a written assignment signed by Chas. A. Williamson, as "executor and devisee;" that they are precluded from setting up any rights acquired from him in any other capacity, and from giving any evidence to vary the effect of the assignment; that the character of the assignment gave them notice of Williamson's fiduciary position, and of the will which created it; and that they dealt with him at their peril, and subject to all the rights of the parties claiming under the testatrix. 2 *Williams on Exc'rs*, 612. 7 *Ves.*, 152, *Hill vs. Simpson.* *Lowrey vs. Commercial and Farmers Bank of Baltimore*, decided in the *Circuit Court for Md. Dist., July* 1848, and cited in 2 *Md. Rep.*, 167. 7 *Johns. Ch. Rep.*, 155, *Field vs. Schieffelin.* 2 *G. & J.*, 98, 99, *Allender vs. Riston.* Act *of* 1843, *ch.* 304.

2nd. That the release of Mrs. Williamson is conclusively shown to have been executed ignorantly and without any consideration, and is besides defective for want of a private examination and acknowledgement; that even if the appellants had known of its existence prior to the assignment under which they claim, they would have taken subject to the right of Mrs. Williamson and the legatees in remainder to impeach it, and to have the account upon which it was predicated reviewed and resettled, such proceedings in the orphans court not being conclusive. 2 *Story's Eq.*, sec. 1395, 3 *H. & J.*, 268, *Spedden vs. The State.* 2 *H. & G.*, 40, *Lowry vs. Tiernan.* 1 *G. & J.*, 229, *Tiernan vs. Poor.* 2 *G. & J.*, 1, *Brundige vs. Poor.* 11 *G. & J.*, 23, *Warfield and Wife.* 2 *H. & J.*, 483, *Hall vs. Griffith.* 7 *H. & J.*, 22, *Haslett vs. Glenn.* 1 *Gill*, 1, *State vs. Reigart.*

The above cases show that the release is at most but *prima facie* evidence of payment and may be rebutted. In this case it was utterly without consideration and was merely a matter of form. Williamson's evidence proves this, and he is a competent witness, having no interest in the fund. The rule is, that a husband and wife are not competent witnesses for or

against each other:—1st, upon the ground of public policy; and 2nd, because their *interests are identical.* This rule was established before separate estates for married women were created, and the reason for the rule *in such cases* no longer exists, and the rule itself should not prevail. See 2 *Starkie on Ev.*, 400. 10 *Johns.*, 44, *Fenner vs. Lewis.* 10 *Pick.*, 265, *Richardson vs. Learned.* 22 *Pick.*, 262, *Dyer vs. Homer.* But having *cross-examined* him, the appellants cannot object to his testimony. 7 *G. & J.*, 397, *Boteler, et al., vs. Beall.* 3 *Md. Ch. Decisions*, 99, *Bullett vs. Worthington.* But without his testimony they have no standing in court, for without it there is no proof of his indebtedness to them. But it is said his declarations, as testified to by Glocker, are not admissible, because he was not a competent witness himself. Now the fact that a man is not competent as a witness himself is the very reason why his *declarations* are. But it would be strange to say that we are bound by his acts and cannot show the circumstances surrounding those acts—that he has committed a fraud and we cannot show it. These declarations were clearly admissible as part of the *res gestæ.* 3 *G. & J.*, 188, *Kolb vs. Whitely.* 7 *Gill*, 3, *Garner vs. Smith.* 9 *Gill*, 222, *Powles vs. Dilley.* 8 *Gill*, 142, *Miller vs. The State.*

But this was a settlement by a husband with his wife— a trustee with his *cestui que trust;* a case which requires *uberrima fides,* where courts of equity inquire into the transaction with the utmost care and caution. 3 *Dessa.*, 462, *Ewing vs. Smith. Hill on Trustees*, 156, 157. 2 *H. & G.*, 40, *Lowry vs. Tiernan.* 1 *Story's Eq.*, sec. 312. 2 *Do.*, sec. 1395. 5 *Gill*, 29, *Forbes vs. Forbes.* In all such cases the *onus* is upon the party who claims under the assignment to show the *bona fides* of the transaction. This again is a release executed by a married woman disposing of an estate over which she had no *jus disponendi.* This she was not competent to do. The case of *Smith vs. Morgan,* 8 *Gill*, 139, decides, that neither the husband nor wife, jointly or separately, can, at law, dispose of the wife's separate estate. This was a case at law, but it settles the principle as to

equity, because at law the husband and wife, jointly, have the same power over the wife's separate estate that the wife alone has in equity, for courts of equity have only made a *feme covert* as to her separate estate a *feme sole.* On this point see 2 *Kent*, 150, 166. 3 *Johns. Ch. Rep.*, 93, *Methodist Church vs. Jaques.* 4 *Yerger*, 433, *Morgan vs. Elam.* 2 *Wharton*, 15, *Thomas vs. Folwell.*

But again, the appellants had notice sufficient to put them upon inquiry. They knew, as matter of law, that Williamson was trustee for his wife, and was also executor. 2 *Story's Eq., sec.* 1380. 1 *Gill*, 1, *State vs. Reigart.* 3 *Md. Rep.*, 550, *Ware vs. Richardson.* The account in the orphans court was settled in October; the assignment was made in February; the appellants were applied to by Williamson, Sutton & Co., in January, for the loan, and exacted an exorbitant rate of interest. Now could they have supposed that just previous to this he had purchased in this mortgage and paid $5000 cash therefor? But again, Williamson was a devisee, and if he acquired a right to the fund by the release he extinguished his own right as devisee, and yet he makes the assignment as "*devisee.*" The use of this word, therefore, was notice to the appellants that the release did not extinguish the right of the devisees.

3rd. That the appellants had no knowledge of Mrs. Williamson's release when they took the assignment, and did not part with their money on the faith of it or its legal effect; that, therefore, there is nothing to prevent her relying on its invalidity as against them, to the same extent as against her husband if no assignment had been made, they having notice of Williamson's fiduciary capacity when they dealt with him.

4th. That even if the appellants were otherwise entitled to take any benefit of their assignment, the court would nevertheless, before granting its interposition, give the whole amount to Mrs. Williamson as her equity, under the circumstances of this case. *Bell on the Law of Property*, 67 *Law Lib.*, 113, 132. 4 *G. & J.*, 282, *Duvall vs. Farmers Bank.* 11 *G. & J.*, 22, *Groverman vs. Diffenderffer.* 1 *Gill*, 1, *State vs. Reigart.*

5th. That the legatees in remainder are entitled to have the property invested for their benefit, and are not precluded, by any act of Williamson or his wife, from setting up all equities against the appellants. 6 *H. & J.*, 484, *Darne vs. Catlett.* 6 *G. & J.*, 196, *Evans vs. Iglehart.*

Le Grand, C. J., delivered the opinion of this court.

The facts in this case which it is important for us to notice ⋅ are but few. The appellants' claim rests entirely on the assignment executed on the 1st February 1849, and the effect of the settlement of a final account in the orphans court by Charles A. Williamson, as executor of Mrs. Jones, and the execution of the release to him by his wife, Mrs. Ann S. Williamson.

The assignment of Williamson to the appellants was as "*executor* and *devisee,*" and, independently of any other fact, could convey to them nothing beyond his interest as *devisee*, or what in this transaction the law authorised him to dispose of in his capacity as *executor*. As devisee, his interest under the will of Mrs. Jones was purely contingent, dependent entirely on his surviving his wife. The authority with which he was clothed as *executor*, will depend on the true nature of the transaction with Miller and Mayhew. Apart from our act of Assembly of 1843, ch. 304, an executor might sell or raise money on the property of the deceased, *in the regular execution of his duty*, and the party dealing with him would not be bound to inquire into his object; but if a party dealing with him knows, or had *reasonable ground* for believing, that he intended to misapply the money, or was *in the very transaction* applying it to his own private use, he could take no advantage from the operation. *Albert and Wife, vs. Savings Bank*, 2 *Md. Rep.*, 168, and the authorities there relied upon.

Now it is clear beyond all possibility of successful controversy, that the assignment and order of Williamson were given to Miller and Mayhew, to secure a debt due by the firm of Williamson, Sutton & Co., a mercantile house of which he was a member. This circumstance sufficiently, in

contemplation of law, notified the assignees that the executor was about to commit a *devastavit*. But, it has been urged, that if they had made the proper examination in the orphans court, they would there have discovered a *final* account had been settled by the executor on the 9th October 1848, and, also, that Mrs. Williamson, his wife, had executed a release to him, and from this it is argued, that whether they knew or not of the final account and release when they entered into the transaction, they are nevertheless entitled to invoke these facts in support of their title. It is undoubtedly true, as a general proposition, that a party is authorized to rely upon the disclosures of the public records in support of his title; but it is equally so that he is affected by the equities in others which they exhibit. This being so, how stands the case? Thus: Miller and Mayhew knew, according to the imputation of the law, that the executor was misapplying the funds of the estate, that is, devoting them to his own private purposes; and, moreover, that he professedly acted as executor and devisee, which informed them there was a will on record in which was to be found specified the interests of the objects of the testator's bounty. If, therefore, they entered into the transaction without any knowledge of the final account of the executor, or of the release of Mrs. Williamson, they were not *in point of fact* deceived by those circumstances; and if, on the other hand, they had examined the public records, they would have seen that the property assigned to them belonged for life to the wife of the executor, and, in a certain contingency, was to go to other parties, and thus *in fact* they would have been affected by any equity of Mrs. Williamson, or of those in remainder. This being so, the question as to the existence of any outstanding equities is presented for our decision, and its solution must depend upon the facts disclosed in evidence and the will of Mrs. Jones under which the property has been acquired.

It is clear from the testimony of the executor, that he did not pay to his wife the sum of money for which she had given her release, but his evidence is objected to on the ground that

he is incompetent as a witness in behalf of the interest of his wife, and we think the objection well taken. There are but few exceptions to the rule which prohibits husband and wife from testifying for each other, and they relate principally, if not exclusively, to cases where, if she were not permitted to testify, she would be exposed, without remedy, to personal injury. 1 *Greenleaf, sec.* 343.

But while we sustain the objection to the testimony of Mr. Williamson, we concur with the chancellor in the opinion that the testimony of Mr. Glocker is admissible. The declarations of Williamson, when arranging with him for the preparation of the account, are part and parcel of that transaction, and it is apparent, from the whole testimony of the witness, that the account was prepared and the release given by Mrs. Williamson, not because either or both together truly explained the transaction, but to enable the executor to close up the estate by settling a final account. But, apart from these circumstances, it must be obvious to every unprejudiced mind, that the executor did not pay the sum of money mentioned in the release of his wife. That paper bears date the 7th October 1848, and the assignment to Miller and Mayhew the 1st February 1849. The mortgage was not due until 17th September 1848. Now it is clear, from the very terms on which the appellants made the advance, that Williamson was hardly pressed for money, for it is beyond belief that a person in easy circumstances would consent to enter into a contract which subjected him to a most exhorbitant rate of interest; and yet, if we are to believe Williamson paid his wife, we are to believe he anticipated the collection of the mortgage, and then in the course of a few months consented to pledge this very mortgage, on terms perfectly inconsistent with the fact, that he was in possession of funds sufficient to enable him to purchase out the mortgage security from the estate of which he was executor. We think all the circumstances surrounding the whole case, show plainly enough that Mrs. Williamson never did receive the money; and also that Miller and Mayhew, when they received the assignment, were wholly

ignorant of the settlement of the final account by the executor and the execution of the release by his wife. They no doubt supposed, as it is manifest both he and Mr. Glocker did, that he was entitled to the property as his own, *jure mariti.* But be this as it may, they took from him the title which he had as executor and devisee, and we have shown that the law denies to an executor the power to dispose of the assets of the estate *for his own advantage,* and if he attempt to do it with the knowledge of his assignee, or under such circumstances as reasonably ought to put the latter on the inquiry, that he can take no advantage from it. If there be any case in which such knowledge can be imputed, this is that case. The evidence shows they received the assignment in security for the payment of a debt, having no connection whatever with the estate of Mrs. Jones, and must therefore be taken as affected with all the equities, either of Mrs. Williamson or of the parties in remainder. If they were not apprised of the release until after this controversy commenced, they were not *in fact* deceived by it, and therefore not induced by it to deal with the executor.

If it avail anything, then it must be because of the force given to it by the law independently of their knowledge, and this involves the inquiry, how far Mrs. Williamson had the right to dispose of the interest acquired under the will of her aunt, Mrs. Jones, for if she had no right to dispose of the estate and thus defeat the interests of the parties in remainder, her act was illegal and of no effect.

Although it has been held in this State, that a specific bequest of consumable articles vests the absolute property in the legatee for life, *(Evans vs. Iglehart,* 6 *Gill & Johns.,* 198,) still it has never been denied anywhere, that if it be the apparent *intention* of the *testator* that the thing shall not be consumed, but shall go to the party in remainder, that in case of *danger* the courts will interfere and compel the tenant for life to give security. So in the case of *Boyd and others, vs. Dennis Boyd,* 6 *Gill & Johns.,* 25, where the devise was as follows: "$10,000, of which you (the devisee) are already in posses-

sion of the greatest part, is to be at your disposition, and for your use, free of interest, during your natural life, but after your death to be invested in bank stock," &c., the court held, that the tenant for life could not be compelled to give security for the amount of the devise, in absence of proof of the same being in danger; but this was placed distinctly on the ground that the language of the will was peculiarly strong and emphatic; the devisee "was to have the use and *disposition* of the property free of interest during his life."

In the case now before us it is beyond all cavil, that it was the intention of the testatrix, that in the event of the death of Mr. and Mrs. Williamson without issue, that the estate devised was to be enjoyed by the parties indicated by her, and who are now before us asking that their interests may be protected; we think they are entitled to the relief which they solicit.

In the case of *Smith's Ex'cr, vs. Morgan,* 8 *Gill,* 138, although the court held at law neither the wife alone, nor the husband and wife conjointly, can divest the wife's interest in property to which she is entitled to her sole and separate use, yet they declined to decide the question, whether the wife is to be considered in a court of equity as a *feme sole,* with power to dispose, or possessing only such powers as the instrument which confers her title bestows.

In the case of *Tiernan vs. Poor,* 1 *G. & J.,* 229, the court say: "It is not meant to intimate in any thing which has been said, that however the complainant might suffer by a reliance upon the conduct of those with whom he contracted, that this contract could be enforced against the right of disposition contained in the deed of trust. That would constitute a paramount *law,* governing and controlling every contract in relation to it, and it need be scarcely necessary to say that no decree could pass against her, to carry into effect any contract she might make, *unless such contract were within the limits of her jus disponendi.*" In the cases of *Tiernan vs. Poor,* 1 *Gill & Johns.,* 229, and *Brundige vs. Poor,* 2 *Gill & Johns.,* 1, the deed of settlement provided, that the separate pro-

Miller and Mayhew, *vs.* Williamson, *et al.*

perty of the wife should be held in trust, "for the sole and separate use, benefit and behoof, of the said Deborah, (the wife,) for life, so that she be suffered to take and receive the entire profits thereof to her own separate use, without being subject to the control of the said Dudley, or of any future husband, &c., and in nowise answerable for the payment of his or their debts or engagements, and subject to be *sold* and *conveyed* by the said Deborah *absolutely, in such manner as she may think proper.*" In the case of *Warfield and Wife,* 11 *Gill & Johnson,* 27, the court held, that the will under which the fund was derived did not contemplate a settlement to her separate use, and therefore it was competent to husband and wife, on their joint application, to authorize the husband to withdraw the fund from chancery.

From this review of the decisions in our State, it appears it never has been decided that the wife has the right to dispose of her separate estate, unless that power be given to her by the instrument making the settlement, nor where such power is exercised in a manner *different* from that pointed out in the deed or will, as the case may be. So far from it, it is expressly said, in the case of *Tiernan vs. Poor,* that the right of disposition contained in the deed constitutes a *paramount law,* and that no decree could pass to enforce any contract, unless such contract be within the limits of her *jus disponendi.*

Besides this, had the appellants made the proper inquiry they would have discovered, to say the least, that it was extremely questionable, under the law of this State, whether the wife, as *tenant for life,* had the right to receive and receipt for the money. In the case of *Evans, et al., vs. Iglehart, et al.,* 6 *Gill & Johns.,* 196, speaking of the duties of the executor, the court say: "If the surplus or residue thus bequeathed consists of *money* or property, *whose use is the conversion into money,* and which it could not for that reason be intended, should be specifically enjoyed nor consumed in the use, but be by the executor converted into money, for the benefit of the estate; as for example, a quantity of merchandise, a crop

of tobacco, or the like, an investment thereof must be made by the executor, in some safe and productive fund, or it must be put out on adequate securities, and most properly under the authority and direction of the orphans court, or a court of equity, so as to secure the dividends, interest or income, to the legatee for life, and the principal after his death to the legatee in remainder."

According to this decision, which has never been overruled, Mr. Williamson, as executor, ought to have applied to the orphans court for an order to invest the money secured by the mortgage, and not have assumed to hand it over to the legatee for life, to be consumed to the prejudice of the rights of those in remainder.

We do not think, as contended in argument, that the appellants are entitled to the interest due on the mortgage, which was not embraced in the final account of the executor. It stands on an entirely different footing from the cases of pin-money which were cited at the bar. In that class of cases, the wife or her representative is interdicted from recovering where she has not yearly demanded it, whatever may be due for pin-money for the years which have elapsed, and this doctrine rests on the idea, that the allowance of pin-money is for the adornment of the person of the wife, and as the husband has supported her in the meantime, the presumption is, that she has been compensated by other allowances in lieu of pin-money, 2 *Bright on Husband and Wife*, 289, and the authorities there collected. But with the private estate the case is wholly different. In all such cases it is her property and may be reclaimed at any time, her husband standing in the relation to her of trustee.

On the whole we are of opinion, the evidence shows that Miller and Mayhew dealt with Williamson, not as purchaser, but as executor and devisee, and, as such, he could not assign, as they claim he did, the estate of his testatrix for his own debt, and that when the transaction was consummated, they had *actual* knowledge he was so applying the funds of the estate to his own purposes. We also think it equally ob-

vious Mrs. Williamson never received the amount specified in the release, and that she and those in remainder are entitled to that sum, with interest due on the mortgage to be invested for their benefit. The investment, however, should be so made as to secure to the complainants the interest on the sum during the life of Mr. Williamson, if he should survive his wife. He had clearly the right to dispose of his contingent life estate, and the complainants are entitled to have the fund so invested, as to secure to themselves the interest on it during the survivorship of Mr. Williamson, if such an event should occur. Holding these views, concurring as they do in the main with those expressed by the chancellor, we neither affirm nor reverse his decree, but will sign such an one in the premises as ought to have been passed. The case under the act of 1854, ch. 183, must go to the circuit court for the city of Baltimore, to which court the trustee, T. Parkin Scott, Esq., mentioned in the proceedings, will report his proceeding under our decree.

> *Cause sent to the Circuit Court for Baltimore city, under act of* 1854, *ch.* 183.