# PHOENIX MUTUAL LIFE INSURANCE COMPANY v. HARRIS.

---

EXECUTORS AND ADMINISTRATORS; ASSIGNMENTS; LIFE INSURANCE; PUBLIC POLICY; AFFIDAVITS.

1. At common law an executor or administrator had absolute power of disposal over all personal property coming into his hands, including choses in action, and sales by him protected purchasers, except where fraud appeared; and statutes providing for the granting of decrees of court as to sales are generally construed to be for the protection of the executor or administrator, and not as a limitation of his power.

2. Section 323, D. C. Code (31 Stat. at L. 1240, chap. 854), providing that no executor or administrator shall sell any property of his decedent without first procuring an order of the probate court, and that any sale made without such an order shall be void and pass no title to the purchaser, does not affect the validity of an assignment made in New Jersey to the insured of a policy of insurance by the administrator there of the beneficiary, so as to prevent such assignment being set up as a defense to an action brought here by the New Jersey administrator against the insurance company after the death of the insured.

3. Where an affidavit of defense is made in good faith and makes out a prima facie defense, a summary judgment for the plaintiff will not be granted. (Citing *Codington* v. *Standard Bank*, 40 App. D. C. 411.)

No. 2953. Submitted October 13, 1916. Decided November 15, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, for want of a sufficient affidavit of defense in an action on a policy of insurance.                                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for the plaintiff, appellee here, in the supreme court of the District under the 73d rule.

In December of 1870 the defendant company issued a policy of insurance on the life of Albert W. Harris of New York city, payable to his mother, Mrs. Caroline M. Harris, "or her executors, administrators, or assigns." On the 24th of February, 1898, the beneficiary, Mrs. Harris, died in the State of New Jersey, of which she was a resident. Whereupon, on the 3d day of January, 1899, the plaintiff herein was appointed administrator of her estate, and on the 2d of March, following, he filed a release and refunding bond purporting to be signed by the heirs at law and next of kin of the deceased, in which they acknowledged the receipt from the plaintiff as such administrator of all their respective shares and interests in said estate.

On or about the year 1899 the plaintiff, as administrator of the estate of Mrs. Harris, the beneficiary, executed an assignment of the policy [to the assured], the consideration recited being $1 and other valuable consideration. The policy theretofore had been in the possession of the assured, who thereafter continued to hold it and pay premiums thereon until his death in August of 1914.

Thereafter, in January of 1915, the plaintiff, in virtue of his New Jersey appointment and the provisions of sec. 329 of our Code [31 Stat. at L. 1242, chap. 854], filed the suit herein against the defendant for the recovery of $5,000, the proceeds of said policy. The defendant interposed an affidavit of defense setting out the foregoing facts, and, further, that the executors of the estate of the assured, Albert W. Harris, have demanded payment to them of the proceeds of the policy in virtue of said assignment.

We therefore are called upon to determine the question whether this New Jersey administrator may maintain an action here on a policy which he does not deny was assigned by him to the assured Harris about fifteen years prior to the death of the assured.

*Mr. Benjamin S. Minor* and *Mr. Hugh B. Rowland* for the appellant.

*Mr. Daniel Thew Wright* and *Mr. T. Morris Wampler* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Under the provisions of sec. 323 of our Code, which became effective in 1901, no executor or administrator may sell any property of his decedent without first procuring an order of the probate court, and any sale made without such an order is declared to be void and to pass no title to the purchaser. It is the contention of the plaintiff that inasmuch as it does not appear that the consent of court to the assignment of this policy had first been obtained, the courts of this jurisdiction, in view of the public policy expressed in said sec. 323, ought not to recognize this assignment.

While it does not definitely appear where this assignment was made, it does appear that the estate was settled in New Jersey, where Mrs. Harris, the beneficiary, was domiciled at her death; and inasmuch as this policy constituted an asset of her estate, although not mentioned in the list of assets filed by the administrator, probably for the reason that its value to the estate was negligible, it is not a violent assumption that the assignment was made during the course of administration in New Jersey. And as it does not appear that the common law had been modified in New Jersey, it is apparent, prima facie at least, that this was a perfectly valid assignment there. *Vreeland* v. *Schoonmaker*, 16 N. J. Eq. 512, 530. Indeed, it is conceded that the assignment was valid in New Jersey, the situs

of the thing assigned. Of course, at common law an executor or administrator had absolute power of disposal over all personal property coming into his hands, including choses in action, and such sales protected purchasers, except where fraud appeared. *Wyatt* v. *Rambo,* 29 Ala. 510, 68 Am. Dec. 89; *Jones* v. *Atchison, T. & S. F. R. Co.* 150 Mass. 304, 5 L.R.A. 538, 23 N. E. 43; *Kent* v. *Bothwell,* 152 Mass. 341, 9 L.R.A. 258, 25 N. E. 721; *Petersen* v. *Chemical Bank,* 32 N. Y. 21, 88 Am. Dec. 298; *Lark* v. *Linstead,* 2 Md. Ch. 162; *Albert* v. *Baltimore,* 2 Md. 159; *Miller* v. *Williamson,* 5 Md. 219. Owing to this rule of the common law, statutes providing for the granting of decrees of court as to sales generally are construed to be for the protection of the administrator, and not as a limitation of his power. *Flynn* v. *Ohio G. W. R. Co.* 159 Iowa, 571, 45 L.R.A.(N.S.) 1098, 141 N. W. 401; 11 R. C. L. 411.

Whether, at the time this assignment was made in New Jersey, when the rights of the parties became fixed, the law of this jurisdiction denied the right of local executors and administrators to make such an assignment, we do not deem it necessary to determine, but see *Miller* v. *Williamson, supra,* and *Marbury* v. *Ehlen,* 72 Md. 206, 20 Am. St. Rep. 467, 19 Atl. 648. In our view, even if we assume that such a prohibition existed, no rule of public policy would be offended by giving force and effect to this contract. We think it quite obvious that the provisions of sec. 323 of our Code were intended to apply merely to local executors and administrators dealing with property within this jurisdiction. The section declares that if any executor or administrator shall sell, pledge, or dispose of any property without an order of court, his letters may be revoked, clearly indicating, we think, that the prohibition was not intended to extend to contracts made by executors and administrators of other jurisdictions. In other words, this statute was addressed to the constituent elements or validity of a local contract by executors and administrators, rather than to the procedure to be followed in establishing all contracts by executors and administrators, wherever made.

The transaction in question was regularly effected by a New Jersey administrator, and the subject-matter was New Jersey property. The dominion of that State over personal property within its borders and its right to regulate its transfer hardly will be questioned. *Green* v. *Van Buskirk,* 7 Wall. 139, 19 L. ed. 109. Clearly, therefore, the validity of this contract ought to be determined by the laws of that State, and we see no room for the application of the rule that a contract will not be enforced in one jurisdiction, even though valid where made, if in conflict with the public policy of the forum. However, in view of the rule of the common law, to which we have referred, it would be going far to hold that there was anything about the transaction tending to corrupt public morals or in any way affect the public policy of this jurisdiction. This is not an attempt by a New Jersey administrator to transfer by assignment personal property located here, contrary to the laws of this jurisdiction, nor is it an attempt, as in *Oscanyan* v. *Winchester Repeating Arms Co.* 103 U. S. 261, 26 L. ed. 539, to enforce a contract "corrupt in its origin and corrupting in its tendencies." The general rule was there stated to be that the validity of a contract is to be determined by the law of the place where made, unless it is to be performed in another country. The enforcement of the contract in that case was refused because it involved a gross violation of trust, "vicious in its character and tendency, and so repugnant to all our notions of right and morality, that it can have no countenance in the courts of the United States."

Nor do we perceive any points of similarity between this contract and that involved in *Emery* v. *Burbank,* 163 Mass. 326, 28 L.R.A. 57, 47 Am. St. Rep. 456, 39 N. E. 1026, cited by counsel. That case involved an oral agreement made in Maine, by the terms of which a resident of Massachusetts agreed to leave all her property at her death to a resident of Maine, in consideration that said resident would go to Massachusetts and care for the promisor (see *Scudder* v. *Union Nat. Bank,* 91 U. S. 406, 412, 23 L. ed. 245, 248). After the death of

the promisor the enforcement of this contract was attempted in the courts of Massachusetts, where the property involved was located. It was ruled that the Massachusetts statute requiring agreements to make wills to be in writing evidently embodied a fundamental policy, which forbade that Massachusetts testators should be sued there upon such contracts *without written evidence,* wherever the contracts were made. The court declined to pass upon the question "whether, for instance, if, by some unusual chance, a suit should happen to be brought here against an ancillary administrator upon a contract made in another State by one of its inhabitants, the contract would have to be in writing," and confined its ruling "to contracts by Massachusetts testators." The statute rendered incompetent in Massachusetts oral evidence of a contract to make a will. This implied a rule of procedure applicable to all Massachusetts testators, and really involving Massachusetts property. Thus had the property been located in Maine, the agreement would have been enforceable there. So, after all, this case determines nothing more than that a statute of another jurisdiction will not be permitted to override a local rule of procedure as to local property. By parity of reasoning, the courts of one jurisdiction ought not to countenance an attempt to render ineffectual the policy of another as to property within that other jurisdiction, which is precisely what we would be doing in the present case should we countenance this attempt on the part of this New Jersey administrator to repudiate a valid contract affecting New Jersey property. He comes here admitting that he made a perfectly valid contract in New Jersey concerning property there located, and attempts to avoid that contract because, forsooth, he would not have been permitted to make it concerning property located here.

Being of opinion that the affidavit of defense here interposed was made in good faith and that, prima facie at least, plaintiff has no right to recover (*Codington* v. *Standard Bank,* 40 App. D. C. 411), we reverse the judgment, with costs, and remand the cause for further proceedings.      *Reversed and remanded.*